ALVIRAS E. SNOW, Appellant, *v.* JOHN Y. RICH, Respondent.

Judgment—When Final—Appeal—Time for — Declarations—of Grantor—When not Admissible to Impeach Conveyance Statute of Limitations — How Pleaded — Sec. 2992 R. S. 1898—Cause of Action—When Arises—On Contract to Convey—Innocent Third Purchaser—How Affected.

*Judgment—When Final—Appeal—Time For.*

A judgment is not final while a motion for a new trial, made within the time allowed by law, is pending and undisposed of, and an appeal taken and perfected within six months from the date of overruling the motion for a new trial is taken in time.[1]

*Declarations — Of Granntor — When Not Admissible to Impeach Conveyance.*

Declarations of a grantor made after having parted with his title are not admissible to impeach his own conveyance in the absence of any proof of collusion or of some fraudulent scheme between grantor and grantee.

*Statute of Limitations—How Pleaded—Sec. 2992 R. S. 1898.*

An allegation in an answer that "For a second defense, the defendant alleges, that the said cause of action, if any, stated in said complaint, is barred by the provisions of Sec. 2859, 2860 *et seq.* Revised Statutes and Code of Civil Procedure," is a compliance with the requirements of Sec. 2992 R. S. 1898, as to pleading the Statute of Limitations, and sufficient to authorize the introduction of evidence showing adverse possession.

*Cause of Action—When Arises—On Contract to Convey—Innocent Third Purchaser—How Affected.*

Where there is an agreement between parties for a mutual exchange of lands, and each puts the other in possession of

[1]*Watson* v. *Mayberry,* 15 Utah, 265; *Orchard Co.* v. *Hanley,* 15 Utah, 506; *Stoll* v. *Daly Min. Co.,* 19 Utah, 271.

the lands so exchanged and the agreement is subsequently violated by one of the parties, by mortgaging the land to be conveyed by him, the cause of action in the other arises when he discovers the violation, and a subsequent verbal agreement between parties to wait five years before executing deeds each to the other, while it would bind the violator of the contract personally, would not preclude a subsequent grantee who, in good faith went into possession under claim of right, and without notice or knowledge of the agreement, from successfully pleading the statute, provided the possession was peaceable, uninterrupted, continuous, open, adverse, under claim of right and known to plaintiff.

( Decided May 18, 1900.)

Appeal from the First District Court, Boxelder County. Hon. Charles H. Hart, *Judge*.

Action in ejectment for a certain piece of land in Brigham City. Defendant denied plaintiff's allegations of ownership and plead the statute of limitation. From a judgment for defendant plaintiff appealed. *Affirmed*.

*James A. Williams, Esq.*, and *S. P. Armstrong, Esq.*, for appellant.

Civil actions can be commenced only within the periods prescribed in the three succeeding chapters, *after the cause of action shall have accrued*, except where in special cases a different limitation is prescribed by statute. Com. Laws 1888, Sec. 3129, Rev. Stat. Sec. 2855.

The possession that will bar a right of entry has always been held to be a strictly adverse possession; that is to say, adverse to some claimant who had the present right of entry. *Pinkey* v. *Burrage*, 31 N. J. L. 23–4.

The entry of Loveland was had, at the sufferance of plaintiff, and in pursuance of said contract for purchase. The possession of Loveland was taken and held sub-

servient to, and in privity with the title of plaintiff; in fact, with the expectation and intent of acquiring that title from plaintiff; hence was not hostile in its inception. Tyler on Eject. and Adverse Enjoy. p. 874.

Neither the entry nor the continued occupation was "exclusive of other right," as required by the statute. Rev. Stat. Sec. 2862–2864.

To constitute adverse possession, the occupation must be open, visible, notorious and exclusive, and must be retained under a claim of right to hold the land against him who was seized; and the person against whom it is held must have knowledge, or the means of knowledge of such occupation and claim of right. *Thompson* v. *Pioche*, 44 Cal. 517; Sedg. and Waite Trial Title to Land, Sec. 730, p. 569–70; *Tanner* v. *Hall*, 60 Mo. 277; *Armstrong* v. *Merrill*, 14 Wall. 145.

Where a party enters into possession under an agreement to purchase and transfers his possession to a third party, such third party stands in the same situation toward the vendor as does the original purchaser. *Jackson* v. *Bard*, 4 Am. Dec. 268; *Potts* v. *Coleman*, 67 Ala. 225; *Russell* v. *Erwin*, 38 Ala. 49–50; *Blackwell* v. *Ryan*, 21 S. Car. 123; *Quinn* v. *Quinn*, 27 Wis. 170, *supra; Jackson* v. *Walker*, 7 Cow. 642; *Lewis* v. *Hawkins*, 23 Wall. 125; *Ellsworth* v. *Hale*, 33 Ark. 636.

An instruction not responsive to any issue in the case, is reversible error, in that it is calculated to mislead the jury and cause them improperly to consider in making up their verdict, an issue not in the case. *Holt* v. *Pearson*, 12 Utah, 63, and cases cited.

*Ricy H. Jones, Esq.*, and *Henry L. Steed, Esq.*, for respondent.

Appellant's action was ejectment to try title and obtain possession of land. The burden was on him to prove (1) that he is the legal owner—had the legal title (2) of premises described with sufficient certainty to enable an officer to determine location, boundaries and extent. (3) That within seven years he has been seized, in fact, or possessed of the premises in controversy.

The thing granted cannot rest in parol, but must be shown with that distinctness of description that will enable it to be identified. The general rule upon this subject is, that every conveyance must, either on its face, or by words of reference, give to the subject intended to be conveyed such a description as to identify it; if land, it must be shown so as to afford the means of locating it. *Mesick* v. *Sunderland*, 6 Cal. 312; *Crosby* v. *Dowd*, 61 Cal. p. 602; *Cadwalader* v. *Nash*, 73 Cal. p. 45; *Reed* v. *Lowe*, 8 Utah, p. 41.

### STATEMENT OF FACTS.

This is an action in ejectment to recover a piece of ground of 23½ feet frontage by 8 rods deep, the same being a strip of land on the east side of the west half of lot 8, block 14, plat "A" Brigham City Survey. The complaint was filed July 1, 1898, and contains the usual allegations of ownership and right of possession on the part of the plaintiff, and the unlawful detention of the premises by the defendant. The defendant by his answer denies plaintiff's allegations of ownership and right of possession of the land; and as a further defense alleges that the cause of action was barred by the provisions of sections 2859 and 2860 Rev. Stat. Utah.

The facts in the case, as shown by the record, are as follows: On the 27th day of January, 1890, appellant Snow, at Brigham City, Utah, entered into an agreement

with one C. C. Loveland, who was at the time the father-in-law of Snow, by which Loveland was to give to Snow 100 acres of farming land known as the "Deweyville land," valued at $21.25 per acre. As a part of the purchase price of said land Snow was to give Loveland 106 feet frontage in said lot 8, which land includes the 23½ feet frontage in issue, and pay an indebtedness owed by Loveland to the Brigham City Co-op. amounting to about $500. The balance of the purchase price was to be paid in cash. A memorandum of the agreement was signed by the parties, which is as follows:

"BRIGHAM CITY, January 27, 1890.

"One hundred acres of Deweyville land lying south and west of Brig Burbanks. Purchasing price $21.25. A. E. Snow to pay amount of C. C. Loveland debt at Co-op. The lot east of Loveland's house valued at $800, and to pay the balance in cash less amount due the R. R. Co. A. E. Snow to be responsible for mortgages on the eight hundred lot.

"(Signed)           A. E. SNOW,

"C. C. LOVELAND."

The evidence shows that the $21.25 mentioned in the agreement meant that Snow was to pay Loveland at the rate of $21.25 per acre, or raise $2,125.00 for the 100 acres of Deweyville land. Snow immediately put Loveland into possession of the town lot and Loveland put Snow into possession of the 100 acres of Deweyville land. Each one paid the taxes on the land in his possession. Soon after the exchange of lands, Loveland, in making and giving a mortgage on other land adjoining, included the 100 acres of Deweyville land by mistake. The mortgage so given was for five years, and the land could not be released until the time had expired. Plaintiff testified that each agreed to wait until

the release of the mortgage before executing deeds to each other for the lands so exchanged.

Loveland died before the mortgage became due, and it was foreclosed after his death, and the 100 acres of, Deweyville land sold to satisfy the debt secured by the mortgage. Plaintiff further testified that between the date of the agreement and the death of Loveland he (Snow) paid Loveland's indebtedness to the Co-op. of about $500.00, and paid Loveland in cash about $600.00 on the deal, taking receipts for $544.38 only of the amounts so paid. Loveland owned the land on the west adjoining the strip of ground in question. Early in 1890 Loveland gave to his daughter, Mrs. Janie L. Steed, the 23½ feet in question, and the adjoining land on the west, being the whole of the west half of said lot 8, block 14. Mrs. Steed immediately went into possession of the land, cut down the trees from the west half which included the 23½ feet in dispute, and she and her husband the same year erected thereon a brick dwelling house at a cost of about $7,000. During the time the house was in course of construction the ground in question was covered with building material for the house. No part of the house is on the 23½ feet of ground in dispute but stands just west of and adjoining it, and the 23½ feet is used as a yard to the house. Mrs. Steed had the whole of this half lot, including the 23½ feet of land in question, inclosed with a substantial fence, plowed, cultivated and sowed it to lawn grass, and planted thereon fruit and ornamental trees, and expended more than $25.00 in digging ditches, making dams and embankments for watering it.

The deed received by Mrs. Steed from her father to the land in dispute was not recorded until March, 1898, about eight years after her father C. C. Loveland, purchased it from plaintiff. In 1895, Mrs. Steed leased the premises

including the land in question to one John T. Rich, who as her tenant occupied it until December 5, 1896, when he (Rich) purchased from Mrs. Steed the entire property. John T. Rich, after purchasing the property, continued in the open, notorious, peaceable and uninterrupted possession of it until his death, which occurred in 1897. His son, John Y. Rich, the defendant, who had been living on the premises with his father, John T. Rich, continued in possession until the commencement of this suit.

Mrs. Steed testified that during the time she was in possession of the land in question she paid all taxes assessed against it, and her claim of ownership and possession was open, notorious, uninterrupted and peaceable, and known to the plaintiff who visited at her house, and during said time frequently passed by it.

The evidence also tended to show that plaintiff must have known of the sale and transfer of the land by Mrs. Steed to John T. Rich, and during the seven or eight years covering the occupation and claim of ownership of the land by these parties and the transactions between them in relation to the land he made no claim of ownership, either to Mrs. Steed or to John T. Rich, and some of the witnesses in the case testified that Snow had disclaimed to them having any interest in the land in question.

Plaintiff testified that before Steed and his wife commenced building this house a conversation was had between plaintiff and Loveland and Steed and his wife, and it was decided that the house should be built on the line so that in case of any trouble arising afterwards no portion of the house would be situated on the ground in question. This testimony was contradicted by Mr. Steed and his wife, both of whom testified that they never knew nor heard of plaintiff claiming any interest in or to the land.

22 Utah—9.

The issues were tried by a jury, who returned a verdict for defendant, "no cause of action." Judgment was entered on the verdict September 16, 1898. Plaintiff within the time provided by law served defendant with notice of intention to move for a new trial. On September 15, 1898, the court overruled the motion. An appeal was duly taken April 24, 1899, seven months and eighteen days after the entry of judgment, but less than six months after the motion for a new trial was overruled. The defendant now moves this court to dismiss the appeal on the ground that it was not taken within the time required by law.

McCARTY, District Judge, after stating the facts delivered the opinion of the court.

This court has repeatedly held that a judgment is not final while a motion for a new trial, made within the time allowed by law, is pending and undisposed of, and that an appeal taken and perfected within six months from the date of overruling the motion for a new trial is taken in time. *Watson* v. *Mayberry*, 15 Utah, 265; *Orchard Co.* v. *Hanley*, 15 Utah, 506; *Stoll* v. *Daly Min. Co.*, 19 Utah, 271; 57 Pac. 295.

On the authority of these cases the motion to dismiss the appeal is overruled.

Plaintiff offered to prove that just prior to the death of C. C. Loveland he (Loveland) came to plaintiff and took him to Steed's office, and while there asked him (Snow) for a deed to his wife of the land in question, and Snow stated to Loveland that he would not give a deed until he received a deed for the 100 acres of Deweyville land; to which offer defendant objected. The court sustained the objection to which ruling the plaintiff excepted and now assigns it as error. We think the court was right. It was not shown, nor attempted to be shown that either

Mrs. Steed or John T. Rich was present at the time this alleged conversation took place, and the rule is well settled that the declarations of the grantor made after having parted with his title are not admissible to impeach his own conveyance in the absence of any proof of collusion or of some fraudulent scheme between the grantor and the grantee. 1 Jones on Ev. Sec. 242, and cases cited in note.

There is no evidence in this case that shows or tends to show any fraud on the part of either Mrs. Steed or John T. Rich, but it appears from the record that they acted in good faith in the transaction by which they acquired title to the land in question.

Counsel for the appellant objected and excepted to the testimony showing adverse possession on the part of Mrs. Steed and John T. Rich of the land in dispute, and alleges error because of the admission thereof, on the ground that adverse possession was not properly pleaded.

We think the position of counsel on this point is untenable. Sec. 2992 Rev. Stat. 1898, provides that "In pleading the statute of limitations it is not necessary to state the facts showing the defense but it may be stated generally that the cause of action is barred by the provisions of section (giving the number of the section in the code of civil procedure relied upon, and of the subdivision thereof, if it is so divided) and if such allegation be controverted the party pleading must establish on the trial, the facts showing that the cause of action is so barred."

Defendant's answer contained the following allegation: "For a second defense, the defendant alleges, that the said cause of action, if any, stated in said complaint, is barred by the provisions of Sec. 2859, 2860, *et seq.* Revised Statutes and Code of Civil Procedure."

We think this allegation was sufficient to authorize the

introduction of evidence showing adverse possession. It is certainly in compliance with the requirements of Sec. 2992, above referred to.

Sec. 2859 of our Code is identically the same as the provisions of the California Code on the same subject (Deering's Code of Civil Pro. Sec. 318), and it has been repeatedly held by the Supreme Court of that State, that in an action to recover possession of land, a plea of the statute of limitations in the form prescribed by the Code of Civil Procedure and referring to the section relied upon, giving the number and subdivision thereof, when the section is divided into subdivisions, is sufficient, and entitles the defendant to give in evidence every essential fact tending to establish the defense of the statute. *Hagely* v. *Hagely*, 68 Cal. 348; *Webber* v. *Clarke*, 74 Cal. 11; *Manning* v. *Dallas*, 73 Cal. 420; 2 Estee's Pl. Sec. 3321.

In his brief, counsel for plaintiff has elaborately and at considerable length discussed the question as to whether the cause of action was barred by the statute of limitations. He insists that the record conclusively shows that after C. C. Loveland mortgaged the Deweyville land they, Snow and Loveland, agreed to hold the contract for the exchange of lands in abeyance until the expiration of the mortgage, at which time they were to make conveyance each to the other respectively, and that as a proposition of law plaintiff is entitled to recover, and that the plea of the statute of limitations ought not to prevail.

Plaintiff's cause of action accrued when he discovered that Loveland had violated his agreement by mortgaging the land in question, thereby rendering it impossible for him to comply with the contract to convey the land to plaintiff. The subsequent verbal agreement between the parties that they would wait five years before executing

deeds each to the other for the lands mentioned, while it would deprive Loveland of the benefit of the statute of limitations it would not preclude the subsequent grantees of their land who in good faith went into possession of the same under a claim of right, and without notice or knowledge of the agreement, from successfully pleading the statute, provided their possession was peaceable, uninterrupted, continuous, open, adverse and under claim of right and known to the plaintiff.

There is a conflict in the evidence as to whether or not the subsequent grantees had notice of the verbal agreement referred to, but the great preponderance of the evidence on this point is decidedly in favor of the defendant. And even if Mrs. Steed did know of this agreement but entered into possession of the property under a claim of ownership, and she and her grantees paid all taxes assessed against it, and continued in peaceful, open, notorious and adverse possession under a claim of right for a period of seven years before the commencement of the action, and during said time the character of her claim and possession was known to Snow, and the great weight of the evidence shows such to be the case, she and her grantee acquired title by adverse possession under the statute. *Armstrong* v. *Kisteed's Lessee*, 5 Ind. 256; *Hale* v. *Gerdfelder, et al.* 52 Ill. 91; 2 Wood Lim. Sec. 254; Buswell, Lim. & Adv. Pos. Sec. 230.

We find no error in the record, and the judgment of the trial court is therefore affirmed. The costs of this appeal to be taxed against the appellant.

BARTCH, C. J. and BASKIN, J. concur.