## BOWMAN v. OGDEN CITY.

No. 1870. Decided January 9, 1908 (93 Pac. 561).

1. APPEAL—TRANSFER OF CAUSE—TIME OF TAKING APPEAL. Under the statute providing that an appeal may be taken within six months from entry of the judgment, an appeal may be taken within six months after the overruling of a motion for a new trial, made within the time allowed by law.[1]

2. SAME—REVIEW—PRESUMPTIONS—SUFFICIENCY OF EVIDENCE. It will be presumed that the evidence was sufficient to support the verdict in the absence of a showing that the bill of exceptions contains all the evidence.

3. SAME—RECORD—BILL OF EXCEPTIONS—SUFFICIENCY OF CERTIFICATE. A bill of exceptions was a transcript of the official stenographer's notes, with his certificate that it contained a full transcript of all the evidence. Counsel for respondent accepted service of the tran-

---

[1] Snow v. Rich, 22 Utah 123, 61 Pac. 336; Felt v. Cook, 31 Utah 299, 87 Pac. 1092.

script, as and for the bill of exceptions, and indorsed thereon that they had no amendments to propose. The bill was thereupon allowed by the court "as a true and correct bill of exceptions." *Held* that, though the court in the certificate of settlement did not expressly state that the bill contained all the evidence, yet it by necessary implication certified to the truth of the statement of the stenographer that the bill contained all the evidence. (*Mitchell v. Jensen*, 29 Utah, 346, 81 Pac. 165.)

4. MUNICIPAL CORPORATIONS—DEFECTIVE SIDEWALKS—ACTIONS FOR INJURIES—NOTICE OF INJURY—WAIVER OF DEFECTS. Defects in a claim presented to a city council under Sess. Laws 1903, p. 12, c. 19, in that it was not verified and did not sufficiently describe the extent of claimant's injury, were waived, where the city council did not decline to consider the claim because not properly made out, but acted on it.

5. ACCORD AND SATISFACTION—WHAT CONSTITUTES. Where one having a personal injury claim against a city having presented the same receives a payment on account thereof, there being no express agreement that it shall be in satisfaction either in full or in part of the claim, the presumption is that it was intended as full recompense for the injury, barring a subsequent action for the same injury.

6. SAME—EVIDENCE—SUFFICIENCY. Evidence *held* insufficient to overcome the presumption that a sum paid by a city to one who had presented a personal injury claim against it was in full satisfaction of the claim.

7. SAME. Where a personal injury claim against a city is only partially allowed, claimant cannot accept the part allowed, knowing that the rest has been rejected, and then recover in an action for the part rejected, in the absence of an agreement that the acceptance of the allowance shall be regarded as payment only of the part allowed, and that the city is not discharged from the part rejected.

8. MUNICIPAL CORPORATIONS—CONTRIBUTORY NEGLIGENCE—CARE REQUIRED OF TRAVELER. A traveler is required to keep a reasonable lookout for defects and dangers which are known to attend particular places, and to make such use of his faculties as will enable him to discover obvious dangers in a highway or sidewalk.

9. SAME. A traveler who has knowledge of a defective condition of such a character as renders a walk so unsafe that it cannot be prudently used is guilty of negligence in attempting to use it, if the defect can easily and without substantial inconvenience be avoided by going around it or taking a safer way.

10. SAME. It was not negligence *per se* for a traveler, who knew of a ridge about eight inches above the level of the walk left by filling in an excavation, to attempt to cross it while it was dark.

11. SAME. That a traveler attempted to cross over a ridge about eight inches above the level of the sidewalk left by filling in an excavation, without thinking of it or the danger, which he knew, was not negligence *per se*.[2]

APPEAL from District Court, Second District; J. A. Howell, Judge.

Action by John Bowman against Ogden City. Judgment for plaintiff, and defendant appeals, and plaintiff moves to dismiss. Motion to dismiss denied.

REVERSED AND REMANDED FOR A NEW TRIAL.

*Jno. E. Bagley* for appellant.

*Richards, Rolapp & Pratt* for respondent.

STRAUP, J.

Plaintiff brought this action to recover damages for personal injuries alleged to have been sustained by the negligence of the defendant. An excavation was made across a sidewalk in Ogden city for the laying of water or sewer pipes. After the pipes had been laid the excavation was filled. The surface was left in a rounded condition, and was raised about eight inches above the level of the walk. This condition existed for about one week prior to the accident. It is alleged that the plaintiff, in the nighttime, while walking along the walk, and being wholly unaware of the obstruction, struck or stubbed his toe against it, and was thrown to the ground. The answer contained a general denial, pleas of contributory negligence and accord and satisfaction, and allegations that the plaintiff failed to present a verified claim in compliance with the statute. A trial before the court and jury resulted in a verdict for the plaintiff, which was rendered on the 12th day

---

[2] Dwyer v. Salt Lake City, 19 Utah 525, 57 Pac. 535.

of December, 1906. On the same day, a judgment was entered on the verdict in favor of the plaintiff, from which the defendant has prosecuted this appeal. On the 15th day of December the trial court granted the defendant ten days' additional time in which to serve and file a notice of intention to move for a new trial. On the 21st day of December the defendant served and filed such a notice. The motion was overruled February 12, 1907. On July 6, 1907, the defendant served and filed a notice of appeal. The statute provides that notice of a motion for new trial must be filed within five days after the rendition of the verdict, but that the time may be extended by the court; that an appeal may be taken within six months from the entry of the judgment. The plaintiff has moved to dismiss the appeal because not taken in time. It is argued that an appeal can only be taken within six months from the entry of judgment, and not within six months from the overruling of a motion for new trial, and that the appeal was not taken within such time. The motion for new trial was filed within time. It has been repeatedly held by this court.

"That a judgment is not final while a motion for new trial, made within the time allowed by law, is pending and undisposed of, and that an appeal taken and perfected within six months from the date of the overruling of the motion for a new trial is taken in time." (*Snow v. Rich*, 22 Utah 123, 61 Pac. 336, and cases there cited; *Felt v. Cook*, 31 Utah 299, 87 Pac. 1092.)

The motion to dismiss is denied.

A further question requires consideration before passing to the merits of the case. It is claimed by the respondent that the bill of exceptions does not contain all the evidence. To properly review the principal errors assigned, the bill should show that it contains all the evidence; for, in the absence of such a showing, it will be presumed the evidence was sufficient to support the verdict, the court justified in overruling the defendant's motion for nonsuit, and in refusing the defendant's request to direct a verdict in its favor. The bill of exceptions is a transcript of the official stenographer's notes containing the testimony of the witnesses by questions and answers, ex-

hibits, and records of the city council.  To the transcript so
furnished by the stenographer is attached his certificate "that
the foregoing 112 pages contain a full and correct transcript
of all the testimony and other evidence adduced in said cause,
and all the objections and exceptions of counsel and rulings
of the court thereon, except only the impaneling of the jury,
which is not included herein."  Counsel for plaintiff accepted
service of this transcript as and for the bill of exceptions, and
indorsed thereon, "we have no amendments to propose to the
foregoing, and consent  that the same may be presented for
settlement without further notice."  The bill was thereupon
settled and allowed by the court in the following language:
"The foregoing bill of exceptions in the above-entitled cause
is hereby settled, allowed, and signed by me as a true and cor-
rect bill of exceptions in this case."  While the court, in the
certificate of settlement, did not say in express language that
the bill contains all the evidence, yet such expression was not
essential, if the statement that the bill contains all the evidence
otherwise sufficiently appears on the face of the bill.  If coun-
sel proposing the bill had, at the conclusion of the statement
of the evidence, written the words, "the above is all the evi-
dence in the case," and the court had as here certified that the
foregoing "is true and correct," the certificate of the court
would as necessarily imply the correctness of such statement
as the correctness of the evidence set forth, or any other state-
ment contained in the proposed bill.  So, too, when the bill
contains the statement made by the official stenographer that
the foregoing pages "contain a full and correct transcript of
all the testimony and other evidence adduced in said cause,"
the court in certifying that the foregoing was true and correct
by necessary implication, certified to the truth and correct-
ness of such statement.  This is not so because it was certified
to by the stenographer but for the reason that the court de-
clared such statement true and correct, as well as every other
statement contained in the proposed bill.  We are no more au-
thorized to assume such statement was not declared true and
correct by the court and to disregard it than to disregard any
other statement contained in the bill.  We are therefore of the

opinion that the bill affirmatively shows that it contains all the evidence in the case. (*Mitchell v. Jensen,* 29 Utah 346, 81 Pac. 165.)

The first assignment of errors presents questions relating to the presentation of plaintiff's claim, and with respect to an accord and satisfaction. The evidence bearing thereon shows: The accident occurred on the 10th day of December, 1903. On the 21st day of the same month the plaintiff sent the following unverified written communication to the city council of Ogden City: "On December 10th going to work between Adams and Washington on Twenty-Third St. I was throwing by a high ridge left by covering by a pipe and was found insensible by Vic. Hestmark and taken hom unconscious because of falling and striking the ridge with head. There are others been hurt, but not so bad. I think it is not just I should lose work and suffer pain because of others carelessness or the city's. I wish to hear from you what you will do." The communication was referred to the law committee, who on the 2d day of March, 1904, reported to the city council that they found the obstruction referred to; that the said Bowman was an elderly man and with no means of support other than his daily labor; that the injuries sustained by the fall caused him to lose three days time; and recommended that he be paid the sum of $5. The report was adopted by the council, and approved by the mayor on the 24th day of March. The plaintiff also put in evidence the following excerpts, taken from the minutes of the city council:

"Dec. 21, 1903. The petition of Mr. John Bowman for reparation of injuries received by falling over a high ridge left in the street by covering a pipe was referred to the law committee."

"Mar. 21, 1903. The law committee recommended that the sum of $5 be paid to John Bowman for personal injuries sustained by fall due to an obstruction on sidewalk. On motion of Mr. Craig the report was adopted."

A warrant for $5 was issued to the plaintiff on the 28th day of March, 1904. He received it, cashed it, and kept the money. When he received the warrant he gave a receipt.

The receipt was not put in evidence. He further testified on his direct examination, that he received information that there was a warrant of $5 for him, and that he went to the City Hall and got it; that the resolutions and the action taken by the city council were not shown him; that he had a talk with a Mr. Chambers, a member of the city council, but couldn't say whether it was before or after he got the warrant. He testified several times that he understood the warrant was for the time lost by him, and that one of the councilmen said to him the warrant "was for the time I had lost. The $5 was for the time I had lost work"—but each time the testimony was stricken by the court. On cross-examination he was asked to state the conversation had with Chambers. He said: "I spoke to him about the $5 in regard to the $5, and I understood it was for the time that was lost." Further questions were asked him, and answers were made thereto as follows. "Q. You told him you had lost 2 1-2 days' work? A. Yes, sir. Q. You told him you wanted the council to pay you $5? A. They allowed $2 a day for the time I lost. Q. You told Mr. Chambers it would be satisfactory if the city council paid you that? A. Never did. Never said such a thing that I am aware of. . . . Q. Did you talk to other city councilmen about it? A. No, sir. Q. Only with Mr. Chambers? A. To tell you the real truth, you know, I never expected I would be taken down the way I was, else I would have made complaints heavier than I did. But I am one of that kind, and I am a well-known character of that kind. I wouldn't have been after the city if it hadn't been very slow looking after me in time of sickness."

He further testified that he was laid up a few days, and then went back to work until he took sick in April following, at which time he consulted a doctor. He then was asked questions, and made answers as follows: "Q. Isn't it true that when you believed you were injured worse than you thought you were then you thought you would go after the city council for more money? Isn't that right? A. When I believed I was getting worse, it was time to look out for something if possible. Q. And that is the reason you went after

the city council? A. Because the accident happened. Q. But you didn't say anything to the city council after they gave you the $5 until you commenced suit. A. No; I didn't say anything to anybody. Q. Now, if you hadn't got sick in April, you wouldn't have brought this suit? A. Well, I don't know. I didn't like to bother them so much; but when I was cut short of income and such like, I thought it was time to look after it, when I knew very well where the complaint came from." On re-direct he was again asked to state the conversation had with Chambers, and he answered: "Why, that conversation was: I went and asked him about what was the intention of the $5, and he said it was for the work I had lost at the time." But he was unable to say whether it was before or after he received the warrant.

Mr. Chambers, for the defendant, testified that four or five days after the accident the plaintiff came to him and said that he had been injured by falling over a raise in the sidewalk, and that he thought the city was responsible; that he should receive his days' wages, which were a dollar and a half; and that he had lost three days. The witness told him that so far as he was concerned he would be in favor of giving him $5, and told him to present his claim to the city council. About a month or six weeks after the claim was allowed and paid the plaintiff called at his house and told him that he was then suffering from the effects of the fall, and thought that he should receive something more for his injuries. He told plaintiff that he did not have anything more to say about it, for when the amount was allowed he did not think anything more would result in the matter. Plaintiff told him that he did not know he was injured as badly as he was, and that he would file suit. The witness told him he had to use his own judgment about that. The testimony of this witness is not denied by plaintiff, except as appears in his testimony already referred to.

From this evidence it is contended, on the part of the defendant, that it was entitled to a direct verdict, on the grounds that the plaintiff failed to present a sufficient and proper claim, and that the plaintiff settled for and was paid in full

of all demands. On the other hand, the plaintiff contends that the settlement and payment were only for the time lost by plaintiff, and not for the personal injuries sustained by him, and that he was entitled to have the question submitted to the jury as one of fact. The trial court adopted the views of plaintiff, and instructed the jury as follows: "The court charges you that, if you find from the evidence that upon the presentation of plaintiff's claim for damages to the city council of Ogden city he was allowed and paid both for his personal injuries and loss of time, and that he received such allowance in full payment for both his personal injuries and loss of time, then the court charges you that he is not entitled to recover in this action; but the court charges you that if you find from the evidence that he was allowed and paid only for his loss of time and wages, and not for his personal injuries, and that the city complied with the plaintiffs acceptance of the amount allowed him on condition that the same was to be accepted in full satisfaction for all injuries received, then the plaintiff is entitled to be compensated for the physical injury, pain, suffering, and sickness resulting therefrom in this action," provided they found the defendant guilty of negligence. Chapter 19, p. 12, Sess. Laws 1903, provides that claims of this character must be presented to the city council in writing, signed by the claimant or his agent, properly verified, and describing the time, place, cause, and extent of the damage or injury, and if the city council shall refuse to hear or consider a claim because not properly made out, notice thereof must be given the plaintiff and sufficient time allowed him to have the claim properly itemized and verified. The plaintiff's claim was not properly made out as provided by the statute in several particulars, principally because it was not verified, and the extent of his injury or damage not sufficiently described. The city council, however, did not decline to consider it, nor to investigate the facts, because the claim was not properly made out. On the contrary it treated the claim, and acted upon it, as though it had been in full compliance with the statute. In such case the defects of the claim presented were waived, and were not thereafter available as a de-

fense to the action. But on the ground that the settlement and payment were in satisfaction of plaintiff's claim, a verdict ought to have been directed for the defendant. Plaintiff's cause of action was for a single tort, and all the damages resulting therefrom were required to be reserved and recovered in one suit. In the presentation of his claim the plaintiff was not at liberty to split his demand. He could not present a claim only for a part, and, if it was allowed, accept it, and then present another claim for another part. The fair meaning of plaintiffs claim as presented by him is that it was a presentation of his entire demand. We think it was so intended by him. As such it was received and acted on by the defendant. From the action taken by the city council it is very clear that the payment made was intended by it to be in full of all demands. When it allowed and tendered plaintiff $5, in the absence of any showing to the contrary, he must be held to know that such allowance was in full, or an allowance in part and a rejection in part, and when he accepted the amount tendered it must be presumed that the payment was in full satisfaction of his entire claim. The plaintiff, having a cause of action against the defendant, unliquidated with respect to amount, for personal injuries claimed to have been caused by its negligence, and having presented a claim for his damage or injury as he was required to do, and having received from the city a stated sum of money on his claim, there being no express agreement that it should be in satisfaction either in whole or in part of the cause of action, the presumption is that it was intended by the parties as a full recompense for the injury, and operates as an accord and satisfaction, barring a subsequent action to recover damages for the same injury. (*Hinkle v. Minneapolis & St. L. Ry. Co.*, 31 Minn. 434, 18 N. W. 275; *Canton Coal Co. v. Parlin, etc., Co.*, 215 Ill. 244, 74 N. E. 143, 106 Am. St. Rep. 162; *Anderson v. Standard Granite Co.*, 92 Me. 429, 43 Atl. 21, 69 Am. St. Rep. 522.)

If the payment was intended by the parties not to be in settlement of all, but only in part, of plaintiff's demand or claim, it was incumbent on him to show it. We have excerpted

from the record all the evidence bearing upon this question. We think it wholly insufficient to overcome the presumption. There is no evidence in the record sufficient to support a finding that the payment was intended by the parties to be only for the time lost by plaintiff, and not for his entire demand. It appears from the plaintiff's own testimony that the minds of the parties did not meet on such a proposition. True he testified that he understood the payment was only for such purpose (which testimony was stricken by the court), and that a councilman told him, either before or after he received the warrant, that $5 was for the work he had lost at the time. But it is not shown that the councilman had authority to bind the city by such a statement. Furthermore the statement made is very far from showing an agreement that the payment was only to be in recompense for the time lost, and that all other matters were left open for future determination and settlement. It is not inconsistent with, nor does it overcome, the presumption referred to, but is entirely consistent with the contention that the councilman regarded the few days' time lost the only damages sustained by plaintiff. The plaintiff could not present a claim, and, if allowed as to time lost, and rejected as to damages for injury to the person, accept the portion allowed, knowing that the rest had been rejected, and then recover in an action for the portion rejected, in the absence of an express agreement between himself and the defendant that the acceptance of the allowance should be regarded as payment only of the part allowed, and that the defendant was not discharged nor released from the part rejected or disallowed. Such an agreement has not been shown. If the plaintiff was dissatisfied with the allowance, he was required either to forego the portion rejected, or submit his claim as a whole to the courts. He cannot be permitted to accept that part which is to his advantage, and make the other a subject of litigation. If his claim was only partially allowed, as he claims it was, he was required to accept the part so allowed in satisfaction of his whole claim, or litigate it as an entirety. (*Yavapai County v. O'Niell,* 3 Ariz. 363, 29 Pac. 430; *Ingram v. State, etc., Commission,* 4 Idaho 139, 36 Pac. 702;

*Board of Com'rs v. Seawell,* 3 Okl. 281; 40 Pac. 592; *Zir-ker v. Hughes,* 77 Cal. 235, 19 Pac. 423; *Brick v. County of Plymouth,* 63 Iowa 462, 19 N. W. 304.)

There is evidence tending to show that the plaintiff, when he presented his claim and received the warrant, did not know his injuries were as serious as later they appeared to be. Appellant has very forcibly urged that such fact alone is not sufficient ground to avoid the settlement. We need not inquire into such matter, for no controversy as to an avoidance of the settlement has arisen. Neither by pleading or otherwise did the plaintiff below nor does he here, seek to avoid the settlement on such or any other ground. The only controversy which has arisen with respect to the settlement relates to its terms, and involves the question whether the plaintiff settled only a part or the whole of his demand.

The defendant further contends: That the plaintiff was guilty of contributory negligence. For a week before the accident the plaintiff usually passed along the walk where the raised condition was once or twice a day in going to and from his work. That he observed the height of the raise, and one time remarked that it was a "slovenly job." That at the time of the accident, early in the morning and when dark, he came along at a pretty fair walk, and stubbed his toe against the raise and fell. He further testified that at the time "I never thought about it (the obstruction). If I had thought about it, it would not have happened, perhaps. But a man's mind is not always on such object as that. . . . I knew it was there, but a man has not always his memory with him. . . . I did not see the mound of earth at the time I stumbled. I did not mind much about it. I tumbled, and I didn't know nothing more." The plaintiff was seventy-nine years of age, but, as stated by him, rather spry for one of his age. It is claimed that the plaintiff was guilty of negligence in using the sidewalk with knowledge of the defect. It is undoubtedly the law that one is required to keep a reasonable lookout for defects and dangers which are known to attend particular places, and that one is bound to make such use of his faculties as will enable him to discover obvious dangers in a

highway or sidewalk.' And if a traveler has knowledge of a defective condition of such a character as renders the walk so unsafe that it cannot be prudently used, he is guilty of negligence in voluntarily attempting to travel upon it, if the defect could easily and without substantial inconvenience be avoided by going around it or taking a safer way. But the defect here was not such as would or should have turned a prudent traveler off from the walk to seek a better route. Going upon a sidewalk known to be defective or out of repair is not of itself negligence, unless the defect is of such a character that a reasonably prudent person should not have attempted to use the walk. The rule is well stated in the case of the *City of Bedford v. Neal,* 143 Ind. 425, 41 N. E. 1029, 42 N. E. 815, in the following language:

"The appellee knew all about the defect in the sidewalk when she entered upon it the last time in the dark, whereby she received her fall and injury. It is true that it is settled law in this court that, because one has knowledge that a highway or sidewalk is out of repair or even dangerous, he is not therefore bound to forego travel upon such highway or sidewalk. [Citing numerous cases.] But the doctrine to be extracted from these cases is that the person with knowledge of the defect or danger must, in attempting to pass, exercise care proportionate to the known danger to avoid injury. And as a consequence the appellee in the case before us, having knowledge of the defect and unsafe condition of the sidewalk when she entered upon it the last time in the dark, she was required to exercise more care than she would have been required to exercise had she been ignorant of the defect, or there had been no defect and the time had been daylight." (Citing cases.)

Nor is the fact that plaintiff did not have the defect in mind at the time of the accident conclusive on the question. In the case of *Doan v. Town of Willow Springs,* 101 Wis. 112, 76 N. W. 1104, it was said:

"Nor was it error for the court to instruct the jury that the fact that the plaintiff had driven over the highway at the point in question with knowledge of its defective and dangerous condition was not conclusive in law that he was guilty of contributory negligence. True the plaintiff testified that he was not thinking when the accident occurred; that he did not know why, but he just happened not to be thinking; that any man was liable to go along the road without

thinking of a bad place therein. Within the repeated rulings of this court, this would not have been sufficient to justify the court in taking the case from the jury."

To the same effect is the case of *Dwyer v. Salt Lake City,* 19 Utah 525, 57 Pac. 535, where it is said:

"Although the respondent had previous knowledge of the condition of the sidewalk and embankment, and undertook to cross the embankment on a dark night, and momentarily forgot about it, yet such knowledge, undertaking, and forgetfulness were not conclusive evidence of such contributory negligence as would bar recovery."

We are of the opinion that the question of contributory negligence was one of fact for the jury.

Because of the error pointed out, the judgment is reversed, and the cause remanded for a new trial, costs to appellant.

McCARTY, C. J., and FRICK, J., concur.