MISSOURI, K. & T. R. CO. v. MORGAN.
(No. 34–2682.)

(Commission of Appeals of Texas, Section A. April 2, 1919.)

ACCORD AND SATISFACTION ☞23—PARTIAL SETTLEMENT—NEGLIGENCE.

Where a servant was injured and on returning to work applied for pay for the time he was absent, and after negotiating for some time the master agreed to pay him half time, and the servant accepted the same, it must be held, in the absence of an agreement to the contrary or evidence that payment of half wages was a voluntary payment, that there was an accord and satisfaction of the servant's entire cause of action, and he could not thereafter recover for pain and suffering or subsequent loss of time.

Error to Court of Civil Appeals of Third Supreme Judicial District.

Action by W. C. Morgan against the Missouri, Kansas & Texas Railway Company. There was a judgment by the Court of Civil Appeals (163 S. W. 992), affirming a judgment in favor of the plaintiff, and the defendant brings error. Reversed and rendered.

Fiset, McClendon & Shelley, of Austin, for plaintiff in error.

Dickens & Dickens, of Austin, for defendant in error.

SONFIELD, P. J. Plaintiff, W. C. Morgan, sued defendant railway company for personal injuries received by him while in its employ. Among other defenses, defendant pleaded an accord and satisfaction and settlement and compromise of the cause of action, evidenced by a sight draft in the sum of $11, which was delivered to the plaintiff and indorsed and cashed by him. Defendant further pleaded that plaintiff executed a release, but that same had been lost. Trial before a jury resulted in a verdict and judgment for the plaintiff, and on appeal the judgment was affirmed.

Error is assigned to the action of the court in refusing to peremptorily instruct the jury to return a verdict for the defendant. The evidence is set out very fully in the opinion of the Court of Civil Appeals. 163 S. W. 992. Plaintiff testified that he was injured on February 16, 1911. About sixteen days after his injury, he resumed work for the defendant company; four or five months thereafter he was discharged. After his discharge he worked in the town of Pflugerville until December, 1911, when he went to work again for the defendant. He continued in the employment until about February or March, 1912, when he was again discharged. Suit was filed on the 2d day of April,

1912. Plaintiff's version of the alleged settlement can best be stated in his own language:

"I asked Newt Rich, the roadmaster, if they would pay me for the time I lost, and he said he would see about it; it went on for about a couple of months, as well as I remember, and he came over and asked me if I would accept half time. I told him I thought they ought to pay me for the time I had lost while injured. Well, it went on and went on for several days, and he came over again, and he said they would give me only half time. It had been going on for a couple of months, and I asked him about it several times, and he said they didn't want to give me more than half time, and I told him I would take that for the time I had lost. There was nothing said about my injuries at all. Nobody talked to me about my time except Mr. Rich. There was nothing said in any of those conversations about settling with me for injuries or damages; there was nothing mentioned about it at all. When they gave me that check they did not tell me that it was in settlement for injuries sustained. The local freight just stopped there a very few minutes, and Mr. Rich gave me that check. I asked what it was, and he said it was for the time I lost while unable to work. There was nothing said about injuries at all. It was about 11 o'clock in the morning, and I was in a hurry, as I had a lot of track torn up, and I put the check in my pocket, and when we went in at noon I just took it out and signed it and gave it to the agent, and he cashed it. I was in a hurry and didn't read it. Mr. Rich told me it was for half time lost, and I took his word for it and never looked at it. That $11 figured out somewhere about half the time I had lost. No one at any time mentioned to me that that was in full settlement for any injuries that I had sustained or for any suffering that I might have in the future. I never had any talk with any one at all except Mr. Rich, and that was just about my wanting pay for the time I lost. I worked for the company by the month, and received $55 a month. When they settled with me after the accident they did not pay me for the whole month. They deducted the time lost from my month's pay."

Plaintiff further testified:

"When I accepted that check, I did not accept it as being a release in full. I accepted it as pay for half the time I had lost while injured."

On his direct examination he testified that he did not execute a release at the time of the receipt of the check. On cross-examination, however, he stated that he would not say whether he signed a release on that occasion or not. He did not remember signing one. He would not say for sure whether he did or not. Plaintiff was able to read. On the trial it was agreed between the parties that defendant was not liable to plaintiff for wages as wages for the time lost by him as a result of his injuries; plaintiff having the right to be reimbursed in this particular by the defendant, if his injury was the result of its negligence.

Plaintiff identified the sight draft, which was introduced in evidence by the defend-

ant, and admitted having received, indorsed, and cashed it. It was on the company's regular form, an ordinary sight draft dated May 2, 1911. In the body of the draft appeared the following:

"For personal injuries sustained on or about February 16, 1911, near Pflugerville, Texas, while employed as section foreman, caused by falling from push car while attempting to step from the same to hand car."

Plaintiff testified that he received a letter from the claim agent of defendant, with inclosure of blank forms of release, four or five days before he was discharged the last time, the letter reading as follows:

"On May 2, 1911, I sent you by roadmaster draft 15307 for $11, account injuries sustained by you on February 16, 1911. Somehow the papers were misplaced in returning them and I have never received the release and voucher. I am inclosing you herewith a duplicate release and voucher and would thank you to kindly execute same and return to me by return mail. This that my records may be complete. Thanking you in advance, I am, Yours truly."

Plaintiff did not reply to the letter, but put the papers in the hands of a lawyer, with instructions to file suit. He did not know that defendant claimed the check was in payment for his injuries until receipt of this letter from the claim agent. He never offered the money back to the company. He did not consult a lawyer or bring suit, nor did he think about bringing suit until his discharge. We quote the following from his evidence:

"As to whether the time when I received this duplicate release from the company, with a request that I sign it was the first time I ever thought about bringing suit, I had to make a living, and I did not think I was able to make a living the way I was hurt, and I had to have some way of getting along. I did not feel like I was able to do hard work. The reason I brought suit was simply because I could not do hard work."

The roadmaster testified that in his conversation with the plaintiff a settlement in full was intended by payment of half time, and also that a release was executed by the plaintiff and turned over to his clerk. Other witnesses testified to the preparation of the release, the search for, and failure to find it. There was evidence of statements by plaintiff to the effect that he had settled with defendant.

Under the findings of the jury, plaintiff had a cause of action against defendant. It existed at the time of the negotiations between plaintiff and defendant, through Rich, the roadmaster. There is nothing in the record to suggest that plaintiff did not know at that time that his injuries were the result of the negligence of defendant, or that there were facts, establishing his cause of action, not known to him at the time of the nego-

tiations, and the receipt, indorsement, and cashing of the draft. His cause of action was for a single tort, for which there could be but one recovery. Such recovery would include various elements of damage, among them loss of time and wages as a result of the injury. Had plaintiff brought suit against defendant and recovered this item of damage, he would have been precluded from an additional recovery or a recovery for other items or elements of damage, the result of the same negligent act. Houston & T. C. R. Co. v. McCarty, 94 Tex. 298, 60 S. W. 430, 53 L. R. A. 507, 86 Am. St. Rep. 854.

Plaintiff had knowledge of the fact that defendant was within its right in deducting from his wages the time lost by reason of the injury; that it was not liable to him for wages as such, unless the injury was the result of its negligence, in which event he would be entitled to payment therefor as an element of his damage; that this was a very part of his cause of action against defendant, if any he had. Plaintiff took the initial step. He was not approached by any agent or representative of the defendant seeking to negotiate a settlement. To use the language of plaintiff:

"I asked Newt Rich, the roadmaster, if they would pay for the time I lost, and he said he would see about it. * * * He said they did not want to give me more than half time, and I told him I would take that for the time I had lost."

He thus asserted against and presented to defendant a demand for payment in full of one element of his damage, a part of his cause of action. He was offered payment for half his time, which he agreed to and did accept, advising Rich that he would take that for the time he had lost. Under plaintiff's own evidence, it must be held that the presentation of his claim, as made, constituted a presentation of his entire demand against the defendant. That it was so received and acted upon by the defendant is evidenced by the language of the sight draft. Plaintiff having a cause of action against defendant, unliquidated, for personal injuries claimed to have been caused by its negligence, having presented a claim for an element of his damage, a part of his cause of action, and having received from defendant a sum in full settlement of such claim, is as much precluded from further recovery as though he had filed suit and recovered judgment upon his cause of action for this one item of damage.

Parties can agree to settle one part of a cause of action, leaving the other for future settlement or litigation. The evidence wholly fails to show such an agreement. True, plaintiff testifies that in the negotiations nothing was said of any other damage, and that he did not accept the draft in full settlement. On the other hand, the evidence is clear and conclusive that defendant, in making the payment, intended an accord and satisfaction of the cause of action in its entirety. Hence the evidence negatives an agreement between the parties for a partial settlement.

Plaintiff does not testify, nor is the evidence susceptible of the construction, that he requested payment for full time and accepted payment for half time as a gift or gratuity, or that he believed, when accepting same, that it was tendered him as such. There can be no question but that plaintiff regarded this as a full settlement of his claim for the time lost. The amount awarded him in the judgment herein does not include recovery for his time or wages lost by reason of his injury, there being recognition of a full settlement of this part of his cause of action.

The money paid plaintiff was not a voluntary payment, but was paid in consequence of his asserted claim. There is no evidence that it was tendered to or received by him as a mere gratuity, or of any agreement for a partial settlement of the cause of action.

Plaintiff could not, in the absence of an agreement to that effect, split his cause of action, demand and receive a settlement for one part, and in a suit recover for the remaining part. Hinkle v. Minneapolis & St. Louis Ry. Co., 31 Minn. 434, 18 N. W. 275; Bowman v. Ogden City, 33 Utah, 196, 93 Pac. 561.

The trial court should have given a peremptory instruction for the defendant. We are of opinion that the judgment of the Court of Civil Appeals, affirming the judgment of the district court, should be reversed, and judgment here rendered for defendant.

PHILLIPS, C. J. The judgment recommended by the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court. We think Morgan was concluded, under the circumstances shown, by his acceptance of the Railway Company's check and his retention of the proceeds.