**WESTERN CASUALTY CO. v. SHEPARD.**
(No. 1533.)

Court of Civil Appeals of Texas. Beaumont.
May 11, 1927.

Rehearing Denied May 25, 1927.

1. **Insurance** ⬅️579—**Illiterate insured cashing draft, reciting settlement of claims under accident policy, held not estopped to make further claim, where insurer's agent represented draft to be advance payment.**

Acceptance and cashing by insured, under accident policy, of draft reciting that it is in full settlement of all claims under policy, *held* not to estop insured from further claiming under policy, where insured, unable to read and write, did not have policy read to him, and testified that he was deceived by statements of insurer's agent that draft was advance payment, and that new policy would be issued.

2. **Insurance** ⬅️665(5)—**Evidence justified finding that insured's condition resulted from blow on head, entitling him to recover under accident policy.**

In action on accident policy, evidence authorized finding that insured's condition was result of blow received on top of head while working on derrick in oil fields, entitling insured to recover, and not result of bad teeth.

3. **Appeal and error** ⬅️1033(4)—**Refusal of special issue more favorable to insured, recovering under accident policy, than issue submitted, held not injurious to insurer.**

In action under accident policy, refusal of requested special issue more favorable to insured, recovering under policy, than special issue submitted, *held* not injurious to insurer.

Appeal from District Court, Liberty County; Thos. B. Coe, Judge.

Suit by J. C. Shepard against the Western Casualty Company. Judgment for plaintiff, and defendant appeals. Affirmed.

E. T. Chew, of Houston, for appellant.
E. B. Pickett, Jr., and C. H. Cain, both of Liberty, for appellee.

HIGHTOWER, C. J. The appellee, J. C. Shepard, filed this suit in the district court of Liberty county against appellant, Western Casualty Company, upon a policy of accident insurance issued to appellee by appellant on February 27, 1925, insuring and idemnifying appellee, whose occupation is designated in the policy as "oil field employee helper on drilling rig," against loss of life, limb, sight, or time by accidental means. Under the heading, "Monthly Accident Indemnity. Total Disability," the policy contained this clause:

"For the period of total loss of time commencing on date of the accident, or within thirty days thereafter, during which 'such injury' alone shall wholly and continuously disable and prevent the insured from performing any and every duty pertaining to his business or occupa-

tion, the company will pay accident indemnity at the rate per month specified in part 1."

And:

"Provided, that indemnity under this part shall not be paid for a longer period than five years."

The monthly rate specified in part 1 referred to is $100. For cause of action, appellee alleged, in substance, that on or about March 20, 1925, while he was working as an employee of the Yount-Lee Oil Company in the Hull oil field in Liberty county, he was seriously and permanently injured by receiving a blow on the head from a large piece of timber which fell from an oil derrick on which he was working, and that as a result of the blow he was rendered wholly unable to do and perform any labor in and about his occupation, and that he was entitled to recover, under the terms of his policy, $100 per month for the full period of time (five years) specified therein.

Appellee further alleged, in substance, that appellant paid him at one time $100 and at another time $200, but that it was being claimed by appellant that the sum of $200 was paid appellee in full settlement of his claim under his policy, but that such was not true, and that appellee understood that the amounts so received by him were to be payments in advance under the terms of his policy; that he delivered his policy to appellant's agent, one O. A. Dean, who told appellee that he (Dean) wanted the policy surrendered to him in order to make an exchange and issue to appellee another policy in place thereof.

Appellant answered by general demurrer and general denial, but admitted the issuance and delivery of the policy to appellee, upon the terms and conditions alleged by appellee, but further averred that, some time about 60 days after the accident to appellee, appellant's agent Dean made a settlement with appellee of all his rights under the policy by executing and delivering to appellee its draft for the sum of $200, which appellee accepted and cashed, and that this was understood between appellee and appellant's agent, Dean, as an accord and satisfaction in full of all claims that appellee had against appellant under the terms of the policy sued on. Appellant further alleged that, about 30 days before the draft for $200 was paid to appellee as an accord and satisfaction in full, it paid to him $100 before anything was due under the policy, merely as an accommodation to appellee, and as an advance payment under the terms of the policy because of appellee's needy condition at that time. The $200 draft was set out in appellant's answer, and is as follows:

"$200.                          May 26, 1925.

"At sight pay to the order of J. C. Shepard, two hundred and no/100 dollars and charge the

same to account of claim under policy No. 125-015, being in full payment, settlement, satisfaction, release and assignment for all claims for benefits, for disability caused by accident, sickness, or death which happened or began prior to the date hereof. Payable at the home office of the Western Casualty Company, Ninth floor Gas & Electric Bldg., Denver, Colorado.

"O. A. Dean, Gen. Agent."

Appellant averred that, at the time the above draft was delivered to appellee, he surrendered the policy sued on to appellant's agent Dean; that appellee accepted and received the draft, with the understanding that it was in full settlement of any claim he might have under his policy, that he indorsed the draft by writing his name on the back of same, and presented the same to a bank in the town of Hull and received $200 in cash thereon, and then took the proceeds and used the same; and that appellee thereupon became bound by the terms of the draft and is estopped to deny that the same was issued to him in full settlement of his claim under the policy.

Appellant further specially denied that its agent Dean used any subterfuge or made any promises to cause appellee to surrender and deliver his policy to its agent Dean and specially denied that it made any misrepresentations or false promises of any nature whatever to appellee in that connection.

Appellee, by supplemental petition, alleged, substantially, that, at the time the draft for the $200 was delivered to him by appellant's agent Dean, it was understood between them that the $200 thereby called for was only a payment in advance of what would become due him under the terms of the policy at the rate of $100 per month, and that it was never understood between appellee and appellant's agent Dean that the $200 was to be accepted as a payment in full of his claim under the policy; that, on the contrary, appellant's agent Dean stated to appellee at the time of delivering to him the draft for $200 that under appellant's rules it was required that the original policy be surrendered by appellee to appellant's agent Dean, and that he would have to take up the original policy and have another policy issued to appellee in place thereof, but that the terms of the original policy would not be changed in any material respects, and that, as soon as appellant's agent Dean returned to appellant's office, a new policy would be issued and delivered to appellee in place of the original one. Appellee further alleged that he was unable to read and write, and did not know the contents or understand the terms of the $200 draft hereinabove copied, and that appellant's agent did not read the same or explain the same to him as written, and that appellee thought and believed in accepting the same that it was only a payment of $200 in advance that would become due under the terms of his policy, and was intended merely as an accommodation to him, as stated by appellant's agent Dean at the time; that he would not have accepted the draft in full settlement of his claim under his policy, and that he would not have executed the draft nor surrendered his policy to appellant's agent Dean, had he known or believed that appellant's agent did not intend to reissue him a new policy in the place of the original one, and, in short, that, in executing the draft and in surrendering and delivering to appellant's agent his policy, he was induced by the fraudulent representations and statements of appellant's agent Dean. His prayer was for the recovery of the full amount due under the terms of his policy, less the $300 that he admitted had already been paid him, as hereinabove stated.

The case was tried with a jury upon six special issues, each of which was answered in favor of appellee.

Special issue No. 2 submitted to the jury was as follows:

"Did O. A. Dean, as agent or representative of the defendant company, on or about May 26, 1925, when offering to pay plaintiff $200, represent to plaintiff, J. C. Shepard, that he (said Dean) could not and would not make such $200 payment unless plaintiff surrendered to him, said Dean, the policy of insurance which the defendant company issued to plaintiff on February 27, 1925? Answer 'yes' or 'no.' "

To this question the jury answered, "Yes."
Special issue No. 3 was as follows:

"Did said O. A. Dean, when offering to pay plaintiff said $200 on or about May 26, 1925, and before paying same, represent to plaintiff that, before he could make such $200 payment, it was necessary for him (said Dean) to take such policy to his office where he had to keep it, but that he would promptly send plaintiff another policy instead of that policy, and that, after such exchange of policies was made, the plaintiff, J. C. Shepard, would regularly receive payments from the defendant company in installments of $100 per month? Answer 'yes' or 'no.' "

The answer to this question was, "Yes."
Special issue No. 4 was as follows:

"Did the plaintiff, J. C. Shepard, rely upon the said representations, if any, which were made to him by said O. A. Dean at that time, and was the plaintiff, J. C. Shepard, thereby deceived and induced into surrendering to said Dean his said insurance policy which defendant had issued to him on February 27, 1925."

To this question the jury answered, "Yes."
Special issue No. 5 was as follows:

"Did the plaintiff, J. C. Shepard, rely upon said representations, if any, which were made to him by said O. A. Dean at that time, and was he (said Shepard) thereby deceived and induced into accepting the said draft or check for $200 of date May 26, 1925, which the defendant company has pleaded as a compromise and settlement in full?"

To this question the jury answered, "Yes." Special issue No. 6 was as follows:

"Did the plaintiff, Shepard, before he accepted said check or draft for $200, or at the time he accepted it, make any agreement with said O. A. Dean to accept that amount of $200 in full payment, settlement, release, and compromise of all claims for benefits for disability caused by the accident which had happened to him on March 20, 1925?"

This question was answered, "No."

Special issue No. 1 submitted to the jury was as follows:

"Has the injury which the plaintiff, J. S. Shepard, received on March 20, 1925, since the date of said injury, or within 30 days thereafter, wholly and continuously disabled and prevented the plaintiff, J. C. Shepard, from performing any and every duty pertaining to his business or occupation?"

To this issue the jury answered, "Yes." Upon the verdict as a whole, the following judgment was rendered by the trial court:

"Therefore it is ordered, adjudged, and decreed by the court that the plaintiff, J. C. Shepard, do have and recover of and from the defendant, the Western Casualty Company, the said sum of $1,700, with interest thereon from this date at 6 per cent. per annum until paid, for which execution may issue. Further it is ordered, adjudged, and decreed by the court that the plaintiff do have and recover of and from the defendant the additional sum of $204, which is twelve per cent. damages on the said sum of $1,700, the full amount due and unpaid on said policy, together with interest at 6 per cent. per annum on said sum of $204 from this date until paid, for which execution may issue, and, further, it is ordered, adjudged, and decreed by the court that the plaintiff do have and recover of and from the defendant 12 per cent. damages on each monthly installment of $100 which may hereafter mature and become due and payable to plaintiff under and in accord with the terms and provisions of said policy; and it appearing to the court that the parties hereto, plaintiff and defendant, have agreed that, in the event judgment was rendered in favor of plaintiff herein, then the sum of $600 was to be allowed plaintiff as a reasonable attorney's fee for the prosecution of this suit, therefore it is ordered, adjudged, and decreed by the court that the plaintiff do have and recover of and from the defendant the further additional sum of $600 as such attorney's fee, with interest at 6 per cent. thereon from this date until paid, for which execution may issue."

From the judgment above noted, appellant has duly prosecuted this appeal and assigned a number of errors for which it claims that the judgment should be reversed and rendered in its favor, but, if not, that judgment should be reversed and the cause remanded.

Learned counsel for appellant contends that the trial court committed error in refusing to peremptorily instruct the jury to return a verdict in appellant's favor on the ground, as claimed by appellant, that the evidence showed without dispute that the draft of May 26, 1925, above copied, was delivered by its agent to appellee, in full and complete satisfaction of any and all claims he might have had against appellant under the terms and provisions of the policy of insurance sued on, and that its delivery to and acceptance by appellee constituted an accord and full satisfaction between the parties. Much of the brief of appellant's counsel is devoted to a discussion of the evidence bearing on this contention, and we have given the same full consideration, but in addition we have gone to the whole statement of facts and find that the evidence was amply sufficient to carry the case to the jury on this point, and also amply sufficient to sustain the jury's finding that appellee did not agree to accept the $200 draft in full satisfaction of his claims under the provisions of his policy, and that his acceptance of the draft and surrender of his policy to appellant's agent Dean did not constitute an accord and satisfaction as claimed by appellant, and we overruled this contention without further discussion.

[1] It is next contended by appellant that the delivery to and acceptance by appellee of the $200 draft hereinbefore mentioned, and the indorsement and cashing of it by appellee, constitutes an estoppel against him, and denies to him the right to make further claim under his policy of insurance. In answer to this contention, it will suffice to say that, if appellee was deceived by appellant's agent by false statements and representations, as pleaded by appellee, and was thereby induced to accept and cash the draft, believing that it was only a payment in advance to him of $200 in money, and that appellant's agent would have reissued to him a new policy in the place of his original one, then it cannot be said that he is estopped from making further claim under his original policy. Learned counsel for appellant is mistaken in his assertion that the holding of this court in the case of National Fire Insurance Co. v. Plummer, 228 S. W. 250, is authority for its contention here that the act of appellee in accepting and cashing the $200 draft and surrendering the policy constitutes a binding estoppel. We cannot see that our holding in that case really has any relevancy here. We there held that Plummer, the insured, could not rely upon mere legal conclusions and opinions expressed to him by the insurance company's agent as to his legal rights under the provisions of the policy in that case, and that, having accepted a substantial sum of money in settlement of his claim under his policy, Plummer was concluded thereby. Our opinion in that case did not go off on the question of false representations of fact made by the insurance company's agent to Plummer, and by which Plummer was induced to execute the release in that case. Nor do we see any relevancy between the instant case and that of Railroad Co. v. Morgan (Tex. Com.

App.) 210 S. W. 512, relied upon by counsel for appellant here as supporting his contention of estoppel. There was no question of bad faith on the part of the railroad company's agent in making the settlement there under consideration, and there was no contention made by the plaintiff in that case that the railroad company's agent induced him to execute the receipt for money paid him by the railroad company's agent by making to the plaintiff in that case false and fraudulent representations of fact or promises that were not intended to be kept; in short, there was no question of fraud in that case.

In this case the evidence showed without dispute that, at the time appellee accepted the draft for $200 above mentioned and surrendered to appellant's agent his insurance policy, he was unable to read and write, as was also his wife, both of them being very ignorant and illiterate people, and that the wording of the draft, as we have copied it, was not read over to appellee or in his presence, nor was there any evidence to show that at the time he cashed the draft at the bank in Hull he knew the contents thereof or understood the meaning of its terms. Both appellee and his wife swore positively that they thought at the time the draft was accepted by appellee that it was merely an advancement by appellant's agent to appellee of $200 in money under the terms and provisions of his policy, and that appellee would not have accepted the draft or surrendered his policy, had he known or believed that the draft constituted a full settlement of his claim against appellant under the terms of his policy. Not only so, but both appellee and his wife positively testified that, at the time the draft was accepted and policy surrendered, appellant's agent promised that as soon as he returned to appellant's office a new policy would be issued to appellee instead of his old one, and that his payments of $100 per month would continue as provided by the original policy. In this appellee and his wife were corroborated by a married sister of appellee, who was at appellee's house at the time this draft was accepted by appellee and his policy surrendered. This sister swore positively to statements and representations made by appellant's agent Dean, as alleged by appellee, which induced appellee to accept this draft and to surrender his policy. Under such state of the evidence, the defense of estoppel cannot be successfully interposed by appellant in this case.

[2] Appellant further contends that the undisputed evidence in this case was to the effect that appellee's disability at the time of the trial was not the result of any blow to his head, as claimed by him, but was the result of his bad teeth, and that, therefore, appellant's requested peremptory instruction should have been given to the jury. We have examined the statement of facts in connection with this contention, and we have reached the conclusion, based upon both the testimony of physicians and that of laymen, that the jury was amply justified in finding that appellant's condition was the result of the blow that he received on top of his head while working on a derrick in the oil field, as claimed by him. The evidence shows that a piece of timber about 2 inches thick and 12 inches wide and 6 feet long fell from the top of the derrick, a distance of approximately 80 feet, and struck appellee almost squarely on top of the head. He was thereby rendered unconscious and helpless, and was confined in the hospital 10 days or 2 weeks, and has not been able to perform any of his duties in line with his occupation as an oil field worker since that time. It was more than a year after the date of his injury until the trial was had, and this condition was still existing. It it true that Dr. Pate, a witness for appellant, swore positively that, in his opinion as a medical man, appellee's condition could not be the result of a lick on the head, as claimed by him, but that, on the contrary, his condition was the result of bad teeth. There was medical testimony to the contrary, and the testimony of several laymen, some of whom had known appellee for many years, saw him frequently, worked with him, observed his physical state and ability right up to the time of his injury. From this testimony the jury was amply justified in concluding that appellee's condition was the result of a blow received under such circumstances as entitled him to recover under his policy.

[3] Another contention made by counsel for appellant is that the court was in error in refusing to submit to the jury a special issue. Learned counsel frankly admits in this connection that the special issue as requested was more favorable to appellee than special issue No. 1 submitted by the court, which we have copied above, both touching the extent of appellee's injuries as the result of the blow, which the uncontradicted evidence shows he received while performing his duties at the oil derrick. We think there can be no reasonable contention that the court's refusal to submit this requested special issue could have resulted in any injury to appellant. The jury certainly could not have answered special issue No. 1 as they did in appellee's favor if they would have answered the requested special issue in appellant's favor.

We think that no error in the trial of this case has been pointed out, but, if so, there was none that was in the least prejudicial to appellant.

The judgment has been ordered affirmed.