## POE v. TEXAS & P. RY. CO.

### No. 1541.

Court of Civil Appeals of Texas. Eastland.

April 10, 1936.

Rehearing Denied June 19, 1936.

Barker & Cornelius, of Sweetwater, for appellant.

Mays & Perkins, of Sweetwater, for appellee.

FUNDERBURK, Justice.

By this suit Sam Poe, plaintiff, sought to recover from the Texas & Pacific Railway Company, defendant, a judgment awarding him damages for personal injuries sustained as the result of alleged negligence of the defendant. According to plaintiff's petition, while he was in the performance of his duties as an employee of the defendant and was attempting to roll a heavy barrel upgrade on a sloping floor in a building containing certain materials and appliances, his foot slipped and the barrel rolled back, crushing his knee against the wall. Negligence was predicated upon the failure of the defendant to have the building lighted; failing to keep the floor in proper repair and in permitting it to become sagged and sunken on one side; in not keeping a pump (one of the appliances located in the building) in repair so it would not leak; and in permitting the wooden floor to become wet and sprayed by a solution.

In plaintiff's trial pleadings he recognized that he had, subsequently to his injuries, executed a release of his claim for damages, and alleged he had been induced to sign it by the fraud of defendant's claim adjuster. The defendant, in addition to exceptions and denials, specially pleaded said release as a full discharge of its liability, if any; also, an accord and satisfaction and estoppel. There were further defensive pleas of contributory negligence and assumed risk.

At the close of the jury trial, the court, upon motion of defendant, gave a peremptory instruction, in response to which the jury returned a verdict for the defendant. From the judgment rendered and entered in accordance therewith the plaintiff has appealed.

The action of the court in giving the peremptory instruction is the only error assigned. The record does not show upon what particular findings of fact and/or conclusions of law the judgment rests. There being a jury trial, no statute or rule required the filing of conclusions of law and fact.

It is a necessary inference that the trial court was of the opinion that there was no evidence to support one or more issues which the plaintiff had the burden of establishing, or that the uncontroverted evidence established conclusively one or more of the specially pleaded defenses. Appellant undertakes to show that the evidence was such as to require the submission of issues to the jury, and with this we agree, unless the uncontroverted evidence established that by a valid release or accord and satisfaction and/or estoppel the defendant's liability, if any, was discharged.

Although the plaintiff executed a written release of defendant's liability, if any, for damages, we are of the opinion that the evidence raised an issue of fact as to the validity of the release. Plaintiff by his pleadings laid a basis for having the release avoided for fraud. We shall not undertake to state the substance of all the evidence favorable to the plaintiff and bearing upon the issue. It may be conceded, we think, that absent the testimony next to be noticed, the evidence was insufficient to raise the issue. The testimony of plaintiff referring to the signing of the release, which, in connection with all other evidence favorable to the plaintiff, was, in our opinion, sufficient to raise the issue of fraud, was as follows:

"I stopped a little bit to read it, and he said it wasn't necessary to read it; just signing for the check, and I had been always used to signing for every check I got, so I just signed it.

"Q. Did you read it? A. No sir, I never read it. The reason I signed it was because he just said it was a receipt for the check, and I didn't think he would lie to me about it.

"Q. If you had known that it was anything else other than a receipt for it, would you have signed it? A. No sir, I would not. * * *

"Q. Would you have read it * * * if he had not told you it was just a receipt? A. Yes sir.

"Q. Did you or not start to read it? A. Yes sir, I started to read it and he claimed it wasn't nothing, only signing for the check, and he talked about me having to go back to the hospital, and I never thought a thing in the world about signing a release, when I knew I had to go

back down there. He told me he knew I had to go back, and I didn't figure it was any release when I had to go back down there for treatment. I thought I was signing for a check for straight time from the time I got hurt."

If effect be given to all the evidence favorable to plaintiff, and all evidence to the contrary be disregarded, it appears that plaintiff never intended to execute a release, and did not know that he had done so. There had been no discussion, or even mention, of a claim for damages for his injuries. Plaintiff thought he was being paid $160 covering his lost time, as a matter of policy on the part of the railway company, and having no reference to any question of the liability of the latter for damages. He started to read the release and was prevented from doing so by the false statement that it was only a receipt for the check, understood by the plaintiff as being of the general nature he had been accustomed to sign along with other employees upon receiving pay checks. This it seems clear enough to us raised an issue of fact which, unless something else was, as a matter of law, determinative of the rights of the parties, required submission to the jury.

An exception to the general rule is: "If the releasee or his agent fraudulently induces the releasor to sign the release without reading it or having it read, and to rely upon his statement of its contents or effect, and such statement is fraudulent, the releasor may avoid the instrument." 53 C.J. 1215, § 31, note 42; Texas City Transp. Co. v. Winters (Tex.Civ.App.) 193 S.W. 366, reversed on other grounds (Tex.Com.App.) 222 S.W. 541; Missouri, etc., Ry. Co. v. Morgan (Tex.Civ.App.) 163 S.W. 992, reversed on other grounds (Tex. Com.App.) 210 S.W. 512; Western Union Tel. Co. v. Walck (Tex.Civ.App.) 161 S. W. 902; Chicago, etc., Ry. Co. v. Green (Tex.Civ.App.) 135 S.W. 1031; International & G. N. Ry. Co. v. Shuford, 36 Tex. Civ.App. 251, 81 S.W. 1189; Chicago, R. I. & G. Ry. Co. v. Vesera (Tex.Civ.App.) 237 S.W. 349; Western Cas. Co. v. Shepard (Tex.Civ.App.) 295 S.W. 1105. These authorities we think fully support our conclusion.

There is yet a more difficult question presented. The $160 check or draft had written in the face of it the following: "In full and complete settlement and payment for personal injuries and damages received at Sweetwater, Texas, November 23, 1931."

Regardless of the circumstances surrounding the execution of the release, if the evidence had shown indisputably that plaintiff at the time he indorsed and cashed the check—about three days later—knew of this stipulation in it, we think it could be said that the undisputed evidence conclusively established an accord and satisfaction. Plaintiff, according to his testimony, did not read the check, or know of the said stipulation. He neither pleaded nor offered evidence to prove any reason or excuse for not reading the check, unless the pleading and evidence with reference to the execution of the release shows such reason or excuse.

Appellee alleged as part of its plea of accord and satisfaction that the claim was disputed. This is not supported by the evidence, considering only that favorable to the plaintiff. But this fact is not deemed material. The question of whether or not a claim is in bona fide dispute has reference to consideration as necessary support for an accord and satisfaction. Payment of a part only of an unliquidated claim is sufficient as a consideration, and if it is received in consideration of the agreement, express or implied, that it shall be in discharge of the whole claim, it is immaterial whether the claim be disputed. "When a claim is in dispute, and the debtor sends to his creditor a check or other remittance which he clearly states is in full payment of the claim, and the creditor accepts the remittance or collects the check without objection, it is generally recognized that this constitutes a good accord and satisfaction. The moment the creditor indorses and collects the check, with knowledge that it was offered only upon condition, he thereby agrees to the condition and is estopped from denying such agreement. It is then that the minds of the parties meet and the contract of accord and satisfaction becomes complete." 1 American Jur. p. 225, § 24. The proposition would be equally true if we substitute for disputed claim, unliquidated claim. By the same authority it is said: "To constitute an accord and satisfaction in law dependent upon the offer of the payment of money, it is necessary that the offer of money be made in full satisfaction of the unliquidated demand or claim of the creditor and be accompanied by such acts or declarations as amount to a condition that if the money is accepted, it is to be in full satisfaction, and it must be of such a character that the creditor is

bound so to understand the offer." Id. § 21 p. 222. Under the authorities, we are of the view that if the evidence had shown that plaintiff actually knew of the stipulation in the draft; the conditions of the foregoing proposition would be met, thereby effecting an accord and satisfaction.

■ But, according to the testimony of the plaintiff, there was never any actual meeting of the minds upon the offer of the $160 in full settlement and discharge of plaintiff's claim for damages. The only contract of accord and satisfaction, therefore, if any, arises upon the principle of estoppel. In other words, if plaintiff made any contract whereby he agreed to accept $160 in full settlement and payment of any claim he might have for damages, it is because of the stipulation in the check which he did not know was in the check, and which can be his contract only upon the theory that he should have known that it was in the check, and is estopped to assert the contrary. To state the proposition another way, if there was a contract of accord and satisfaction, binding upon him, it was so only because he was negligent in failing to inform himself of the stipulation in the check, and therefore estopped to claim that such was not the contract. Had the check been sent to the plaintiff through the mails, it is easy to see that he would have necessarily read the check, or become informed of its contents, in order to know what it was. If such had been the circumstances under which he came in possession of the check, there could be little room for difference of opinion that he must have known its contents. But plaintiff did not have to rely upon the reading of the check to be informed what it was. By messenger he, according to his testimony, had been called to see the claim adjuster at the latter's office, and there he had been told that it was the policy of the company to take care of injured employees when they lost only a small amount of time and to pay them straight time. No claim for damages was ever discussed. The extent of plaintiff's injuries was not known at the time, but it was contemplated that not all effects thereof had then accrued. In effect, plaintiff testified that he saw the $160 check written out, and then when he was asked to sign a separate instrument as a part of the same transaction, he was by false representations induced to believe that he was merely signing a receipt, when in fact he was signing a formal release and discharge.

But for this, the plaintiff would have acquired all the knowledge that a reading of the check would have disclosed to him. Under a familiar principle of law the check and the release are to be regarded very much as if they were the same instrument. The check alone was not an express contract of release. It could only give rise to an independent contract as an implication, and where its contents were actually unknown, as already said, by the principle of estoppel. We have concluded that it does not lie in the mouth of the defendant to urge an estoppel when by its own fraud, as we must regard the evidence, it prevented the plaintiff from having that knowledge, the duty to have which, is the sole basis of the estoppel. In Labbe v. Corbett, 69 Tex. 503, 6 S.W. 808, 811, Labbe was under contract to return certain sheep to Corbett, and being sued to enforce such obligation Labbe pleaded fraud of the defendant in delivering the sheep to him in a diseased condition. Corbett countered with the claim that Labbe by the use of ordinary care and diligence could have known of their diseased condition. Relative to this contention, Judge Stayton, speaking for the Supreme Court, quoted approvingly from Railway Co. v. Kisch, L. R. 2 H.L. 120, as follows: "When once it is established that there has been any fraudulent misrepresentation, * * * by which a person has been induced to enter into a contract, it is no answer to his claim to be relieved from it to tell him that he might have known the truth by proper inquiry. He has a right to retort upon his objector: 'You, at least, who have stated what is untrue, * * * for the purpose of driving me into a contract, cannot accuse me of want of caution because I relied implicitly upon your fairness and honesty.'" While the situation is not exactly analogous, we think the principle is applicable here. It seems to us that it cannot properly be said that as a matter of law the transaction relating to the execution of the release did not probably influence the plaintiff in failing to inform himself of the notation upon the check.

■ The duty was upon the plaintiff when he learned of the fraud to repudiate the transaction, and to offer to return the $160 if it was his purpose to further prosecute the claim. There is no evidence that he did this, but in his amended pleading he said: "Plaintiff here now tenders to the defendant said $160 delivered to him at the

time he executed said release, and here now offers to do equity by requesting the trial court, in the event plaintiff recovers herein, to decree that any judgment rendered herein in plaintiff's favor be credited with the $160 and interest thereon at the rate of 6 per cent. per annum from January 2, 1932." We doubt if it was sufficient for plaintiff to attach a condition to his offer to return the money that it be credited upon such judgment as he might recover, but the pleading is a little ambiguous, and tested by the principles governing general demurrers we are unable to say that it was not an unconditional offer to return the money. No point was made of the sufficiency of the tender as a matter of pleading, and under the circumstances we are unable to say that the tender was insufficient.

The strongest authority relied upon by appellee we think is the Commission of Appeals opinion in Missouri, K. & T. Ry. Co. v. Morgan, 210 S.W. 512. That case, as we understand it, did not involve a question of avoiding the effect of a release by reason of fraud. Western Cas. Co. v. Shepard, supra.

Being of the opinion that the action of the trial court in peremptorily instructing a verdict for the defendant was error and that the judgment of the court below should be reversed and the cause remanded, it is accordingly so ordered.