**PANHANDLE & SANTA FE RY. CO. v O'NEAL.**

**No. 1817.**

Court of Civil Appeals of Texas. Eastland.
June 17, 1938.

Mays & Perkins, of Sweetwater, for appellant.

Smith & Smith, of Anson, for appellee.

GRISSOM, Justice.

O'Neal sued the Railway Company for damages alleged to have been sustained by him as the result of an injury suffered while engaged in repairing the defendant's railway track while O'Neal was employed as a section hand. The Railway Company pleaded as a complete defense to the cause of action asserted that O'Neal, for a valuable consideration, had released defendant from any claim for damages arising out of the alleged injury. O'Neal answered that the release was not valid because procured by the fraud of defendant's claim agent. O'Neal alleged that he, when injured, had an insurance policy in effect, the premiums for which were deducted from his pay by the Railway Company. "That on the 28th day of August, 1934, the defendant's claim agent * * * Mr. Taylor * * * came to plaintiff's room in the sanitarium and after the plaintiff had been under treatment of Dr. Rush, defendant's physician and surgeon in charge of plaintiff's case, from the 15th of August until the 28th of August, and said Mr. Taylor * * * told the plaintiff: 'That he had just had a conversation with Dr. Rush about plaintiff's condition and that Dr. Rush advised him * * * that the plaintiff was not injured but that he was a very sick man and that the defendant would not owe the plaintiff anything because he wasn't injured but that plain-

tiff would be entitled to a part of his insurance and that he (* * * Taylor) had come to pay the plaintiff $25.00 of his insurance money.'" Plaintiff alleged he had confidence in Dr. Rush and Mr. Taylor "and plaintiff believed and relied implicitly and wholly upon what the defendant's claim agent, Mr. Taylor, had told him and believed Dr. Rush had made such statement to Mr. Taylor." That Taylor gave him a check for $25 and had him sign "some kind of paper." That "plaintiff relied upon the fact and believed that it was a part payment on the insurance which he was carrying and did on the same day secure the assistance of some one * * * to cash said check for him *. * * but plaintiff says that he never at any time read the contents of said check or draft, but relied wholly upon what Taylor had told him that it was a part of his insurance."

With reference to the visit of Mr. Taylor to plaintiff and the statements made by Taylor, relied on by plaintiff as grounds for setting aside the release, plaintiff testified:

"A. He told me that he had been talking to Dr. Rush, had a consultation with Dr. Rush, and that Dr. Rush said that I wasn't an injured man, but that I was a very sick man.

"Q. What did he say then about paying you anything? A. He said that I wasn't entitled to any damages from the Railway Company, but that I was entitled to some of my insurance.

"Q. Then, did you have any kind of an insurance policy? A. Yes sir. * * *

"Q. All right. Now then, Mr. Taylor said you would be entitled to some of your insurance, did he? A. Yes sir.

"Q. What did he do then? A. He told me to sign some papers that he had there.

"Q. Did you read them over? A. No sir. * * *

"Q. Did he read the paper over to you? A. No sir.

"Q. How long was he in the room with you? A. Possibly five minutes.

"Q. And after you signed that paper, what did he do then, if anything? A. What did Mr. Taylor do?

"Q. Yes. A. He just stepped out and left.

"Q. Did he pay you the $25.00? A. Yes, he gave me a draft or check of some kind.

"Q. Did you notice what kind of a draft or check it was? A. No sir.

"Q. What did you do with the draft or check that he gave you? A. Well, It was someone in the hospital that day, that I got to cash it.

"Q. Do you know whether Mr. Taylor gave you a railroad draft or an insurance draft or what it was? A. No sir.

"Q. If you had thought that that paper was settling your claim for damages against the railroad, would you have signed it? A. I certainly wouldn't.

"Q. If you had not figured that it was a part of your insurance policy, would you have signed it? A. Pardon me?

"Q. Did you sign it because you thought it was a part of your insurance? A. Yes sir.

"Q. Now, did you believe what Mr. Taylor told you, as to what Dr. Rush had told him? A. Yes sir.

"Q. Were you induced by believing that, to sign the paper that he brought up? A. Yes sir."

The release executed by plaintiff and delivered to Taylor was as follows:

"For the sole and only consideration of twenty five and no/100 dollars ($25.00) the receipt of which is hereby acknowledged, I hereby release and forever discharge the Panhandle and Santa Fe Railway Company, its agents and employees, from any and all claims and demands which I now have or may hereafter have on account of any and all injuries, including any injuries which may hereafter develop as well as those now apparent, sustained by me at or near Longworth, State of Texas, on or about July 14, 1934, while employed as a section laborer.

"In making this settlement I am not relying upon any statement made by any agent or physician of said Railway Company as to what my injuries are, or how serious they are, or when or to what extent I may recover therefrom.

"It is definitely understood that in making this settlement no promise or representation is or has been made relative to future employment.

"I have read the above Release and fully understand the same.

"In witness whereof, I have hereunto set my hand and seal this 28th day of August, A. D. 1934.

"Witnesses:     (s) John M. O'Neal (Seal)
"M. J. Nelson
"B. P. Taylor."

The statement in the face of the release "I have read the above release and fully understand the same" was written therein by plaintiff.

The check given by Taylor to plaintiff reads as follows:

"Form 613 Regular          No. 28824
Panhandle and Santa Fe Railway Company
No Protest Not Negotiable after Sixty Days from date
    ⁀ San Angelo, Texas, Aug. 28, 1934.
Pay to the Order of John M. O'Neal
..... $25.00 Twenty-Five and no/100
............ Dollars
In payment of any and all injuries sustained at or near Longworth, Texas, on or about July 14, 1934.
To J. N. Freeman, Treasurer,
Panhandle & Santa Fe Railway Company,
    Amarillo, Texas
              (Signed)     B. P. Taylor."

It was indorsed and cashed by plaintiff after defendant's claim agent left.

We will attempt to analyze the statement testified to by plaintiff and depended on by him as a false and fraudulent statement sufficient to justify cancellation of the release. Plaintiff testified: "He (Taylor) .told me that he had been talking to Dr. Rush, had a consultation with Dr. Rush, and that Dr. Rush said that I wasn't an injured man, but that I was a very sick man." There was no evidence that Taylor's statement was false. Taylor had talked with Dr. Rush concerning plaintiff and the doctor told Taylor that plaintiff was sick but not injured. Plaintiff testified that he believed Taylor's statement "as to what Dr. Rush had told him"; that he was induced by said statement to execute the release. Dr. Rush was not shown to be a representative or physician of the defendant.

Taylor's statement to O'Neal as to what Dr. Rush told him (and on which statement alone O'Neal testified he relied in executing the release) was shown by the undisputed evidence to be true. Moreover, Dr. Rush's statement to Taylor of his opinion as to the cause of plaintiff's injury is not assailed as being other than an expression of an honest opinion. Nor is it shown to have been made in contemplation of a settlement. There is no allegation that any statement by Dr. Rush was false. The statement by Taylor as to what Dr. Rush said being the statement, according to plaintiff's testimony, that plaintiff relied on and that induced him to execute the release and that statement being true, and not made by defendant's physician, and not shown to have been made by Dr. Rush in contemplation of a settlement and not alleged to be false, is certainly no support for cancellation of the release. Wilson v. Jones, Tex.Com.App., 45 S.W.2d 572, 573; 36 Tex.Jur. 812; El Paso & Southwestern Co. v. Kramer, Tex.Civ.App., 141 S.W. 122, writ referred.

Let us consider the balance of plaintiff's testimony as to Taylor's alleged false statement: "Q. What did he (Taylor) say then about paying you anything? A. He said that I wasn't entitled to any damages from the Railway Company, but that I was entitled to some of my insurance." We have been unable to find in the record any evidence that plaintiff believed said statement and relied thereon in making settlement and executing the release. We think Taylor's statement to plaintiff that plaintiff was not entitled to recover damages from defendant was a mere statement of his opinion as to the law, and, even if believed and relied on, was insufficient as a ground for cancellation of the release. Taylor was an adjuster for a Railroad Company, not a lawyer, nor an insurance man, and this was known to plaintiff. The presumption, violent as it may be, is that they both knew the law. The statement by the adjuster, Taylor, that his company was not liable, or that plaintiff was not entitled to recover, being an expression of a legal opinion, and no fiduciary relation being shown, was insufficient to justify cancellation of the release. National Fire Ins. Co. v. Plummer, Tex.Civ. App., 228 S.W. 250, 252; Edge v. Business Men's Assur. Co. of America, Tex.Civ. App., 15 S.W.2d 44, 45.

In Wilson v. Jones, Tex.Com.App., 45 S.W.2d 572, 573, Justice Sharp announced the established rule as to the essential elements required to be established to show actionable fraud, as follows:

"The authorities announce the general rule that to constitute actionable fraud it must appear: (1) That a material representation was made; (2) that it was false; (3) that, when the speaker made it, he knew it was false or made it recklessly

without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by the party; (5) that the party acted in reliance upon it; and (6) that he thereby suffered injury. The gist of an action based upon fraud is found in the fraud of defendant and damage to plaintiff. Each of these elements must be established with a reasonable degree of certainty, and the absence of any one of them will prevent a recovery. 26 C.J. pp. 1062, 1063, 1064 and 1065; Wortman v. Young (Tex.Civ.App.) 221 S.W. 660."

We think it evident from what has been said that plaintiff failed to establish the essential elements of fraud as required by the rule thus announced and was, therefore, not entitled to have the release canceled.

Taylor's opinion that O'Neal was entitled to some of his insurance apparently proved to be correct. O'Neal's insurance policy was a health and accident policy issued by the Pacific Mutual Life Insurance Company of California, the premiums for which were deducted from plaintiff's wages by the Railway Company, at plaintiff's direction, and paid to said Insurance Company.

■ Plaintiff alleged that he did not read the draft "but relied wholly upon what Taylor had told him that it was a part of his insurance." If there is any evidence in the record that Taylor told O'Neal that the release was a receipt for payment of insurance, or that the check was for "a part of his insurance", or anything to that effect, we have been unable to find it. The nearest approach thereto is found in plaintiff's testimony that Taylor said to him that he (plaintiff) was not "entitled to any damages from the Railway Company" but "was entitled to some of my insurance." Later, in the same conversation, plaintiff says Taylor told him to sign some papers; that he signed a paper —shown to be the release—and returned it to Taylor without reading it. To set aside the release, a written contract, on such evidence would be to do so on suspicion and surmise and without a genuine foundation in the evidence. It is undisputed that plaintiff with his own hand wrote into the release—"I have read the above release and fully understand the same", and signed it. Plaintiff could read it but says he did not. If he did not read the release he gives no good reason for his failure to do so. He was not pre-

vented by defendant's claim adjuster. He does not say that the claim adjuster falsely represented the contents of the release. His mere lack of knowledge of the contents of the instrument he signed is insufficient to justify cancellation of the release. El Paso & Southwestern Co. v. Kramer, Tex.Civ.App., 141 S.W. 122, 125, writ referred; Bond v. Fort Worth & R. G. R. Co., Tex.Civ.App., 71 S.W.2d 571, 573; Goodson v. Texas & P. R. Co., Tex.Civ. App., 34 S.W.2d 348, 350; Texas Midland R. Co. v. Hurst, Tex.Civ.App., 262 S.W. 172; 6 R.C.L. 624; Chicago R. I. & T. R. Co. v. Williams, 44 Tex.Civ.App. 168, 99 S.W. 141, writ referred; Williams v. Adams, Tex.Civ.App., 91 S.W.2d 951; Home Ins. Co. v. Lake Dallas Gin Co., 127 Tex. 479, 93 S.W.2d 388, 391; Fritz v. Skiles, Tex.Civ.App., 107 S.W.2d 768; General Life Ins. Co. v. Mathes, Tex.Civ. App., 100 S.W.2d 1044, 1046; 10 Tex.Jur. 99.

■ In Poe v. Texas & P. R. Co., Tex. Civ.App., 95 S.W.2d 505, Poe had received an injury while working for the Railway Company. He executed a release of all claims for damages resulting from the injury and was paid by a check. Both the release and check recited a settlement of Poe's claim for damages. Thereafter, Poe brought suit for damages resulting from said injury. The Railway Company alleged the execution of the release as a defense to his suit. Poe answered that the release was procured by the fraud of defendant's adjuster who, he alleged, represented to him that the release he signed was a receipt for the check given him and the check merely payment of his wages for the time he was sick, such being the policy of the company. Poe testified that he started to read the release and defendant's adjuster told him it was not necessary to read it, that it was merely a receipt for the check; that he would have read the release had the adjuster not told him it was not necessary to do so, that it was merely a receipt for the check. Poe further said that he habitually signed receipts for all checks from the Railway Company. Under such evidence this court held that an exception to the general rule was shown, to-wit [page 507]: "If the releasee or his agent fraudulently induces the releasor to sign the release without reading it or having it read, and to rely upon his statement of its contents or effect, and such statement is fraudulent, the releasor may avoid the instrument." In that case the check

given to Poe in settlement of his claim for damages recited that it was given in settlement and payment of Poe's claim for damages for said injury. Poe testified that when he cashed the check he had not read said statement and was still relying on the representations of the Railway Company's claim agent that the check was for his wages, etc.

Under such facts this court held that the trial court erred in instructing a verdict for the defendant Railway Company.

The Supreme Court, in an opinion by Justice Sharp, after briefly reciting the facts, said (Texas & P. R. Co. v. Poe, 115 S.W.2d 591, 592):

"The substance of Poe's contention is that the release signed by him was represented to him as being merely a receipt for the draft, and that he acted on such statements and signed the release. The acceptance of that contention will not relieve him from the effect of the testimony contained in this record. There are other barriers which are insuperable to his recovery. Admitting that Poe signed only a receipt for the draft, the fact remains unchallenged that he received the draft for an amount in excess of his time, and that the draft contains plain and unmistakable words that it was in full and complete settlement of his injuries. The draft also bore on its reverse side, where Poe was to indorse same, the further notice: 'Read before indorsing.' The evidence is undisputed that he kept the draft in his possession for several days, and that he had ample opportunity to read it and understand its contents. He then cashed the draft and retained the proceeds thereof.

"The exception to the rule above cited is fully recognized, and if applicable would control here. Under the facts in this case that exception will not save his cause of action from the general rule above stated, and permit him to recover. The basis of the railway company's defense to Poe's claim in this suit is not narrowed merely to the release signed by him, but such defense also rests on the draft accepted and cashed by him. Under the state of this record, Poe was concluded from a recovery against the railway company by the acceptance and cashing of the railway company's draft and the retention of the proceeds. Missouri K. & T. R. Co. v. Morgan, Tex.Com. App., 210 S.W. 512; 1 Tex.Jur. p. 281, § 37; 1 C.J.S., Accord and Satisfaction, pp. 528–533, § 34."

The judgment of the Court of Civil Appeals was reversed and the judgment of the trial court affirmed.

When O'Neal signed and delivered the release to Taylor he delivered a check for $25 to O'Neal. This check, or draft, on its face recited that it was: "In payment of any and all injuries sustained at or near Longworth, Texas, on or about July 14, 1934." O'Neal, after Taylor had gone, indorsed and cashed this check. In this connection, we again call attention to the fact that O'Neal wrote into the release— "I have read the above release and fully understand same." A careful consideration and comparison of the facts of the Poe Case and those of the instant case leads inescapably to the conclusion that O'Neal's testimony relative to facts depended upon for cancellation of the release were not nearly as strong as those presented for that purpose in the Poe Case, and determined by our Supreme Court to be inadequate. The quoted language of Justice Sharp may well be applied to the present case.

We conclude that the trial court erred in overruling defendant's motion for an instructed verdict. There being "barriers which are insuperable to his recovery" the judgment for plaintiff is reversed and judgment rendered for defendant.