**SAN ANTONIO, U. & G. R. CO. v. JOHNSON & WEATHERSBEE.** (No. 7868.)

Court of Civil Appeals of Texas. San Antonio. Dec. 5, 1927.

Rehearing Denied Jan. 11, 1928.

1. Animals ⬅33—In action against railroad for diverting cattle infested with ticks, evidence sustained finding shipper did not place plaintiffs' cattle in wrong car.

In action against railroad for negligently diverting to plaintiffs cattle infested with ticks instead of plaintiffs' cattle, resulting in guarantine of plaintiffs' land, evidence *held* sufficient to sustain finding that shipper did not place plaintiffs' cattle in car intended for use by another.

2. Animals ⬅33—Plaintiffs suing railroad for diverting to them cattle infested with ticks held not guilty of contributory negligence as matter of law.

Plaintiffs suing railroad for negligently diverting to them cattle infested with ticks instead of right cattle *held* not guilty of contributory negligence as matter of law because they turned the tick-infested cattle into their pasture without discovering their identity.

3. Animals ⬅33—Evidence held to sustain finding that railroad's agent was negligent in diverting to plaintiffs, cattle infested with ticks.

Evidence *held* sufficient to sustain finding that agent of railroad was negligent in diverting to plaintiffs cattle infested with ticks instead of plaintiffs' cattle, causing quarantine of plaintiffs' land.

4. Animals ⬅33—Railroad diverting cattle infested with ticks, held liable for loss of use of land quarantined and cost of keeping others from land.

Railroad which negligently diverted to plaintiffs cattle infested with ticks instead of plaintiffs' cattle *held* liable for loss of use of plaintiffs' land, which was quarantined, and for wages paid to employee to ride lines of quarantined land to prevent cattle from going upon it.

5. Pleading ⬅162—Office of supplemental petition is to plead facts in avoidance of defensive matters, and defects in original petition must be cured by amendment.

Office of supplemental petition is to plead facts in avoidance of defensive matters which have been set up, and defects or omissions in original petition must be cured by amended petition, not by supplemental petition.

6. Pleading ⬅162—Supplemental petition may be considered as amended petition, if it contains sufficient allegations.

Supplemental petition may be considered as if it were an amended petition, if it contains all allegations necessary to constitute it an amended petition.

7. Appeal and error ⬅171(3)—Supplemental petition will be considered as amended petition, where appellant and trial court so treated it, though not containing all essentials of amended petition.

Supplemental petition, setting up matter proper for amended petition, will be considered as amended petition, where it was treated as amended petition by both appellant and trial court, though it did not contain all essentials of amended petition.

8. Damages ⬅139—$5,225 against railroad for diverting to plaintiffs cattle infested with ticks held excessive; value of pasturage and cost of line rider being no more than $1,905.25.

Judgment for $5,225 against railroad for negligence in diverting to plaintiffs cattle of another which were infested with ticks, instead of plaintiffs' cattle, resulting in quarantine of plaintiffs' land, *held* excessive by portion over $1,905.25; $1,105.35 being properly allowable for loss of use of quarantined land, and $800 for wages of employee engaged to ride lines of

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

quarantined land to prevent cattle from going upon it.

Appeal from District Court, Val Verde County; Joseph Jones, Judge.

Action by Johnson & Weathersbee, a partnership, against the San Antonio, Uvalde & Gulf Railroad Company and the Galveston, Harrisburg & San Antonio Railway Company. Judgment in favor of plaintiff as to the first-named defendant and against plaintiff as to the last-named defendant, and the first-named defendant appeals. Judgment affirmed on condition of remittitur.

Mason Williams, of San Antonio, and Andrews, Streetman, Logue & Mobley, of Houston, for appellant.

Walter Jones, of Del Rio, and Robert M. Lyles, of Austin, for appellees.

FLY, C. J. This action was instituted by appellees, a partnership, against appellant and the Galveston, Harrisburg & San Antonio Railway Company, to recover damages arising from negligence in diverting a car of cattle shipped by them from Whitsett, Tex., to Standart, Tex., to Fort Worth, and shipping with other cattle belonging to appellees a car of cattle infected with ticks, owned by another party, whereby the pasture to which they were shipped was quarantined, entailing great loss to appellees.

The court heard the case and rendered judgment for appellees as against appellant in the sum of $5,225 and against appellees as to the Galveston, Harrisburg & San Antonio Railway Company.

[1] The trial court embodied in the judgment facts which this court adopts as sustained by the statement of facts, that appellant was guilty of negligence in diverting a carload of cattle with ticks and transporting them to Kinney county and delivering them to appellees in place of healthy cattle owned by appellees which were not infested with ticks, which resulted in 8,850 acres of land not infested with ticks and not subject to quarantine regulations to be quarantined, by which appellees were deprived of the use of grass and forage growing thereon, from November 25, 1925, to July 25, 1926, of the value of $4,425, and that such negligence entailed an expense of $800 for the hire of a man to ride the lines of the quarantined land to prevent cattle from entering thereupon and spreading the infection.

Appellant knew that the Bronson cattle diverted by is from Fort Worth were tick-infected cattle, and knew that they were being shipped to Fort Worth under a permit specifying that they were to be slaughtered at once in Fort Worth. The agent of appellant at Whitsett designated the car in which the infected cattle were to be carried to Fort Worth, as well as the cars in which the clean cattle were to be transported to Kinney county. If a mistake was made as to which car was to go to Fort Worth, it was made through the negligence of appellant's agent at Whitsett. The agent was fully informed as to the condition of the cattle belonging to appellees and their desire to keep them from infection, and knew the Bronson cattle were infected. Bronson swore:

"I put my cattle into the pens and loaded them in the car that the railroad company spotted for me. I hardly think I could have loaded them in any other car than the one the railroad company spotted for me. I had nothing to do with the selection of the car in which they were to be loaded; the train crew spotted the car that my cattle were loaded in. There was not more than one chute, and I could not have loaded them in any other car than the one spotted by the train crew for me, and I did load them in the car the train crew spotted for me, and they were billed to Sanders Commission Company at Fort Worth, Tex., under permit B, which indicated they could be shipped for immediate slaughter only. Yes, sir; they were billed as ticky southern cattle, and that permit B was presented to the agent of the San Antonio, Uvalde & Gulf Railroad Company at that time, which indicated that those cattle were ticky cattle."

Those cattle, however, were transported to Standart, in Kinney county, and not Fort Worth. The court was justified in concluding that the shipper of the cattle to appellees was not guilty of contributory negligence.

The first two propositions are predicated upon the assumption that cattle that were shipped to or intended for shipment to appellees were in a car intended for Bronson, but that theory falls to the ground by reason of the testimony of Bronson that he placed his cattle in the car designated, or, as he says, "spotted," for him by the railroad company. If his cattle were in the car intended for them, the cattle of appellees could not possibly have been in that car. Bronson loaded the cattle in the car designated for him, "and they were billed to Sanders Commission Company, Fort Worth, Tex., under permit B."

[2, 3] The fact that appellees received the Bronson cattle at their ranch and turned them into their pasture without discovering that they were not those intended for them would not as a matter of law show contributory negligence. The law does not require a man to whom cattle are shipped from a distant county to know their marks and brands, especially as the person receiving the cattle had never seen them before. The acts of the shipper and appellees in shipping and receiving the cattle at destination are questions of fact as indicating negligence or not, and the court found that fact in favor of appellees. The third, fourth, and fifth propositions are overruled. The evidence

clearly and pointedly shows that the agent of appellant was negligent in not ascertaining the cars in which appellees' cattle were shipped. The cattle of appellees were placed in the cars designated by the agent, and Bronson's cattle were placed in car "spotted" for him. The agent swore that four cars were placed on a switch, numbered 8249, 8306, 8604, and 8402, and swore that the three cars, beginning with 8249 and ending with 8604, were allotted to Storey, the shipper, and of course that left 8402 to Bronson. The first three cars were loaded with appellees' cattle, but the bills of lading show that the first car which was standing at the chute was not billed to Storey but was billed to Bronson. If that be true, then the agent negligently billed the cattle of Bronson to Standart instead of Fort Worth. The agent identified the three cars to be used by Storey, and they were used by him, by stating:

"Four of those cars were connected and setting at the chute, and the most southern car was at the chute, and the next three cars were immediately against them, and I gave orders to load the Johnson and Weathersbee cattle first, and, at the time I did this, this most southern car was spotted at the chute ready to load."

The evidence clearly showed that the cattle were loaded as the agent directed.

Appellees, according to the evidence, when the sanitary inspector invoked the quarantine, chose the cheapest way in which to remove it, by vacating the land quarantined instead of having all of his cattle dipped, which would have taken more time to lift the quarantine as well as cost more money The nonuser of the land for the specified time decreased the damages.

[4-8] The only damages alleged by appellees that could be traced to negligence in sending the infected cattle to Kinney county would be those arising from depriving the appellees of the use of the 8,850 acres of land that were quarantined on account of the infested cattle and the wages necessarily paid to prevent other cattle from going upon the quarantined land. The damages arising from those two sources were directly and proximately caused by the negligence of appellant. In the first-amended petition there was no allegation upon which to base a measure of damages claimed to have been sustained by appellees, and special exceptions were sustained to it. Appellant sought to cure the defects in the petition by filing what is denominated "Plaintiff's First Supplemental Petition." The office of the supplemental petition is to plead facts in avoidance of defensive matters set up by the defendant, but defects or omissions in an original petition must be cured by amendment, and not by supplemental petition. Fink v. Grocery Co. (Tex. Civ. App.) 167 S. W. 35; Mellville

v. Wickham (Tex. Civ. App.) 169 S. W. 1123. If a supplemental petition, however, contains all the allegations sufficient to constitute it an amended petition, it may be considered as such. The supplemental petition does not contain all the essentials of an amended petition, but, as it was treated as an amendment rather than a supplement by appellant as well as the court, it will be so considered by this court. It is alleged generally in the supplemental petition:

"That the reasonable market value of said grass and pasturage and the use thereof during said eight months, was the sum of $5,000, to plaintiff's damage in the sum of $5,000, and that the services of the man employed to ride the fences was $800."

These were the only items of damages sustained by the court. How the court arrived at the judgment of $4,425 for the pasturage cannot be ascertained from the statement, and appellees do not attempt to explain. Appellees were paying 20 cents an acre per annum for the use of the land, and had subleased some of it to Stadler for 30 cents an acre. If this last sum be taken as the correct one by the year, the eight months' quarantine could not have deprived appellees of more than the value of the pasturage for two-thirds of the year, which would amount to 20 cents an acre, which on 8,850 acres would amount to $1,770. That sum being added to the $800 paid to the fence rider would amount to $2,570, instead of $5,225, for which judgment was rendered.

In his testimony, however, Weathersbee, one of the appellees, stated that all of the cattle in the pasture were sold in May, 1926, and that "there was three months which the quarantine didn't hurt us; we had sold our cattle." If that be true, then a pro rata of the charge of 30 cents an acre should be for five months, which would amount to $1,105.25. If $800 for the employee to guard the fences be added, we have $1,905.25.

The evidence failed to indicate that the Galveston, Harrisburg & San Antonio Railway Company was guilty of any negligence in connection with the cattle, and the court did not err in rendering judgment in its favor. The testimony showed that the negligence occurred prior to the time the car was delivered to the last-named company as a connecting carrier.

The assignments of error are not meritorious except the one relating to excess in the judgment, and the judgment will be affirmed as to the Galveston, Harrisburg & San Antonio Railway Company, and will be affirmed as to appellant, if a remittitur of $3,319.75 is entered by appellees, within 10 days; otherwise it will be reversed, and the cause remanded.