The judgment is reversed and the cause remanded.

PER CURIAM.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

## TEXAS & P. RY. CO. v. PRESLEY.
### No. 1874.

Court of Civil Appeals of Texas. Eastland.

Jan. 20, 1939.

On Rehearing March 17, 1939.

Further Rehearing Denied April 28, 1939.

personal injuries and damages received at Choctaw, Texas 3/24/37." On the back of the draft in bold face type were the words "Read before indorsing." Directly below the last quoted words plaintiff wrote his indorsement. On the day plaintiff received the draft he signed and delivered to defendant the following release:

"The Texas and Pacific Railway Company

"Release of Personal Injury and Damage Claim

"In consideration of the sum of Fifty and no/100 Dollars ($50.00) this day paid to J. D. Presley by the Texas and Pacific Railway Company, I hereby release said company from all claims, demands and causes of action against it which have accrued, or may hereafter accrue to me for all injuries and damages of every nature whatsoever, received in and resulting from an accident at or near Choctaw, Texas, on or about the 24 day of March, 1937, when employed as B & B mechanic.

"To secure this settlement and the payment of said sum I hereby rely wholly upon my own judgment, belief and knowledge of the nature, extent and duration of said injuries, disabilities and damages and that no representations or statements about them, made by said Company or its representatives or agents have influenced me in making nor induced me to make this settlement.

"No promise of employment nor other agreement not herein expressed has been made by said company, nor by any of its representatives, agents or employees.

"In testimony whereof I have hereunto set my hand this 30 day of April, 1937.

"(Signed)    J. D. Presley.

"Address—Red Water, Texas

"Witness:

"P. O. Ruthven.  Address—Savoy, Texas.

"J. S. Porter   Address—Ft. Worth, Texas

"Paid by Draft No. 9789."

About one month after plaintiff returned to work for defendant he was discharged. Thereupon plaintiff sued defendant for the damages thus released, and, upon a trial, recovered judgment for $3,000. Defendant pleaded the release of the asserted cause of action as a defense thereto. Plaintiff alleged that employees of defendant, in addition to the $50, evidenced by the draft, agreed to give plaintiff a "permanent" position with the defendant company as a part of the consideration for the

King & Wheeler, of Texarkana, for appellant.

Lincoln & Harris, of Texarkana, for appellee.

GRISSOM, Justice.

In March, 1937, plaintiff, J. D. Presley, while employed as a carpenter by defendant, Texas & Pacific Railway Company, fell from a house he was repairing for defendant and was injured. After plaintiff was discharged from a hospital he received a draft from defendant for $50. It recited on its face that it was "in full and complete settlement and payment for

release of his asserted cause of action against the Railway Company.

Plaintiff testified with reference to the draft that he indorsed it. He further testified:

"Q. You carried this [the draft] around in your pocket several days, didn't you? A. A day or two; I don't remember how long.

"Q. You cashed it over here at Texarkana, didn't you? A. I sent it home and it was cashed. I couldn't get it cashed up there.

"Q. Did you bring it home and cash it at the Guaranty State Bank at Leary, Texas? A. I sent it and had it cashed.

"Q. Who did you send it to? A. My dad. My brother brought it home.

"Q. Did he bring the money back to you? A. No. It was deposited in the bank in my name.

"Q. To your credit? A. Yes.

"Q. You afterwards checked on the money? A. Yes.

"Q. And checked it out of the bank? A. Part of it.

"Q. Still got some of it yet? A. Yes I believe so.

"Q. How much have you got left? A. I wouldn't say.

"Q. Are you offering this $50 check to the Railway Company if they will take it? A. I don't know. I hadn't given it a thought. * * *

"Q. You read this check, didn't you? A. Yes, I imagine I did, but I don't remember anything it says, but I suppose I did read it and I imagine I did.

"Q. You could have read it if you didn't, couldn't you? A. Yes. * * *

"Q. You had Mr. Ruthven, the station agent at Savoy, to indorse that check after you got it, didn't you? A. Yes.

"Q. How long after that was it? A. Well, it might have been that evening. I went to see if I could get it cashed. I needed some money mighty bad."

Plaintiff's attitude with reference to the return or tender of the $50 paid to him in settlement of his claim for damages, taken in connection with his testimony quoted above, is shown by the statement of his attorney at the time when the plaintiff was asked whether or not he was offering to return the $50 to the Railway Company, as follows: "We want to state

that we are tendering to the court the privilege of letting that (meaning the $50.00) apply on whatever judgment, if any, the jury gives the boy."

With reference to the execution of the release, plaintiff testified he expected the claim agent to see him and propose a settlement; that he consulted his section boss; that his section boss advised him to take whatever amount the claim agent offered and a permanent job with defendant. He testified that when the claim agent arrived the claim agent asked plaintiff what plaintiff considered a reasonable sum and plaintiff told him he had been figuring on full time for the time he had lost. That the claim agent told plaintiff the company was in the habit of offering half time "and a permanent job to a man that had been hurt." That the claim agent then offered plaintiff $50 and a "permanent" job with defendant which proposition was accepted by plaintiff. That the claim agent then wrote out the draft and gave it to plaintiff. Plaintiff further testified:

"Q. Then he [the claim agent] wrote another paper out—a release, didn't he? A. I don't remember all he did write.

"Q. He wrote that paper out—Defendant's Exhibit Number '2' [the release] and you took it over and sat down and read it, didn't you? A. I looked it over, but I don't remember reading it.

"Q. You read it and studied it for about 10 or 15 minutes, didn't you, before you signed it? (Witness looks at paper, but does not answer now)

"Q. Nobody prevented you from reading this paper, did they? A. No; I looked over it."

Plaintiff further testified that defendant's doctor misrepresented plaintiff's physical condition.

In Texas & P. Ry. Co. v. Poe, 115 S.W. 2d 591, our Supreme Court, in an opinion by Justice Sharp, said: "The sole question for decision is whether Poe, who claims to have been injured while in the employment of the railway company, may settle a cause of action therefor by the acceptance and cashing of a draft which recites that it is in full settlement of his injuries, and then maintain a suit for such injuries, in the absence of an agreement to that effect."

The draft given to Poe contained the provision, "In full and complete settle-

ment and payment for personal injuries and damages received at Sweetwater, Texas, November 23, 1931" and on the back in large type were the words "Read before endorsing." The opinion contains the following:

"Poe took the draft, and after keeping it three days cashed it; and he still retains the money and makes no unconditional offer to return it to the railway company. Poe also signed a release for the injuries, but stated that he thought it was only a receipt for the draft.

\*     \*     \*     \*     \*     \*

"It is contended that the issue of fraud was raised as to the execution of the release by Poe, and that such issue also applied to the draft received and cashed by him. There is no controversy about the rule that if the railway company, by its agent, fraudulently induced Poe to sign the release, without reading it or having it read to him, or that he relied upon the statements as to its contents, and such statements on the part of the agent were fraudulent, Poe could avoid such release.

\*     \*     \*     \*     \*     \*

"Admitting that Poe signed only a receipt for the draft, the fact remains unchallenged that he received the draft for an amount in excess of his time, and that the draft contains plain and unmistakable words that it was in full and complete settlement of his injuries. The draft also bore on its reverse side, where Poe was to endorse same, the further notice: 'Read before endorsing.' The evidence is undisputed that he kept the draft in his possession for several days, and that he had ample opportunity to read it and understand its contents. He then cashed the draft and retained the proceeds thereof.

"The exception to the rule above cited is fully recognized, and if applicable would control here. Under the facts in this case that exception will not save his cause of action from the general rule above stated, and permit him to recover. The basis of the railway company's defense to Poe's claim in this suit is not narrowed merely to the release signed by him, but such defense also rests on the draft accepted and cashed by him. Under the state of this record, Poe was concluded from a recovery against the railway company by the acceptance and cashing of the railway company's draft and the retention of the proceeds. Missouri, K. & T. Ry. Co. v. Morgan, Tex.Com.App., 210 S.W. 512; 1 Tex.Jur. p. 281, § 37; 1

C.J.S., Accord and Satisfaction, pp. 528–533, § 34."

The trial court's action in instructing a verdict for the defendant was upheld by our Supreme Court.

In Panhandle & S. F. Ry. Co. v. O'Neal, Tex.Civ.App., 119 S.W.2d 1077, writ refused, we held that an employee who accepted and cashed a draft which recited on its face that it was in payment of all injuries sustained by the employee and who signed a release which recited, in employee's handwriting, that he had read and fully understood it, could not recover the damages so released, even if the employee had not in fact read the draft and release.

Plaintiff had a fair education. He could read. The contents of the draft and release were not misrepresented to him. He admits that he either read them or could have. He "looked them over." Under such situation where plaintiff indorses a draft reciting that it is in full and complete settlement and payment for personal injuries and damages received at a certain time and place, which are identical with the injuries for which he seeks to recover in the instant suit, retains possession of the draft for "a day or two"; sends it home by his brother to be deposited in a bank to plaintiff's credit by plaintiff's father, checks upon the deposit and makes no unconditional offer to return the amount, and where he executes and delivers a release of the alleged cause of action which recites that in making settlement he is relying wholly upon his own judgment, belief and knowledge as to the nature, extent and duration of his injuries, disabilities and damages, and that no representations with reference thereto by the defendant have influenced him, nor induced him to make the settlement, and which expressly recites that no promise of employment, nor any agreement other than that expressed in the release, has been made by the defendant, or its representatives, agents or employees, and where plaintiff admits that he read the instruments, or, at least, if he did not read them, could have done so and was not prevented by anyone from reading them, plaintiff is not entitled to recover the damages thus released. Texas & P. Ry. Co. v. Poe, supra; Fritz v. Skiles, Tex.Civ. App., 107 S.W.2d 768; Missouri, K. & T. Ry. Co. v. Morgan, Tex.Com.App., 210 S. W. 512; General Life Ins. Co. v. Mathes, Tex.Civ.App., 100 S.W.2d 1044; Home Ins. Co. v. Lake Dallas Gin Co., 127 Tex. 479,

93 S.W.2d 388, 391; Aetna Ins. Co. v. Holcomb, 89 Tex. 404, 410, 34 S.W. 915.

Under the circumstances disclosed where plaintiff was not prevented, by fraud or otherwise, from reading the draft and release and their contents were not misrepresented, parol evidence of the alleged fraudulent representation that plaintiff would be given a "permanent" job with defendant was not admissible, over proper objection, being in contradiction of the written release executed by plaintiff which expressly recited that such representation had not been made. Distributors Inv. Co. v. Patton, 130 Tex. 449, 110 S.W.2d 47; Wright v. Couch, Tex.Civ.App., 54 S.W.2d 207; Tips v. Barneburg et al., Tex.Civ.App., 276 S.W. 932, 934; Parker v. Schrimsher et al., Tex. Civ.App., 172 S.W. 165, 170, 172.

The judgment of the trial court is reversed and, in the language of our Supreme Court, there being insuperable barriers to plaintiff's recovery, judgment is rendered for defendant.

Reversed and rendered.

## On Motion for Rehearing.

In March, 1937, plaintiff, J. D. Presley, while employed in the Bridge & Builders Department as a section hand for the defendant, Texas & Pacific Railway Company, fell from a house he was repairing for defendant and was injured. He had been working for the Railway Company about eight months at the time of his injury. For several days prior to plaintiff's injury, the section crew, including plaintiff, had been repairing the inside of a section house. The night before plaintiff was injured there was a heavy rain in the vicinity of the section house which was being repaired. Water was standing around the house and the ground in that vicinity was muddy. The roof of the house was covered with metal shingles and the roof was steep. The roof was wet from the rain that had fallen the night before. Plaintiff was a carpenter who had some experience in working on roofs but had never before worked upon a metal roof. He had been employed by Pleasant Kerry, his section foreman. He was 22 years of age. He knew of other section hands who had been employed and "fired" by his section foreman. On the morning after the rain, and under the conditions mentioned, he was ordered by his section foreman to get a ladder and go up on the roof and repair a brick flue located at the top of the roof. There were only two ladders at the place where the work was being done and both were too short to reach to the top of the roof. On the west side of the house there was a patch of Bermuda grass which was not covered with water. In order to repair the roof it was necessary to build a box in which mortar could be mixed and the Bermuda grass spot was selected by plaintiff as the place to set the ladder for his ascent to the roof of the house, and the place where the mortar was to be mixed, for the reason that it was the only spot near the house where such work could be done having the bottom of the ladder and the box in which the mortar was to be mixed out of the water and mud. In going to work and in obtaining and placing the ladder in position, plaintiff had necessarily gotten his shoes wet and muddy. There were no ropes and no ladder with a hook that could be placed over the top of the house and no other appliances immediately available for the purpose of ascending to the top of the metal roof and repairing the flue as plaintiff was directed to do. There were some ropes at the section camp about two miles away. In order to get them it was necessary to push a hand car up-grade the two miles to camp. How many persons would have been required to do this is not shown by the record. The distance from the edge of the roof to the ground was slightly more than sixteen feet. The available ladders were sixteen feet long. It is evident that plaintiff believed, apparently with good reason, that he must promptly obey, without debate, his foreman's command or lose his job.

Plaintiff placed the bottom of one of the ladders on the Bermuda grass on the west side of the house, climbed the ladder and attempted to scale the metal roof. When he was about half way up the roof his feet slipped from under him, he slid off the roof and onto the ground, landing on his head and shoulders and sustained the injury complained of. .

After spending sometime in a hospital and under the care of doctors he returned to work and for about thirty days did light work. Then he was discharged because he was unable to do the work of a section hand. Soon after plaintiff returned to work he was paid $50 by the Railway Company and executed a release of all claims for damages by reason of the

injury mentioned. The release recited that he relied upon his own judgment as to the nature, extent and duration of his injuries and that no promise of employment or other agreement not mentioned in the release had been made to plaintiff. The draft for $50 recited on its face that it was in full and complete settlement and payment for the injuries here sued for.

In our original opinion we reversed the judgment for plaintiff for $2,950 and rendered judgment for the Railway Company. In so doing we relied upon and applied to the facts of this case the principles of law announced in Texas & P. Ry. Co. v. Poe, Tex.Sup., 115 S.W.2d 591; Panhandle & S. F. Ry. Co. v. O'Neal, Tex.Civ.App., 119 S.W.2d 1077; Distributors Inv. Co. v. Patton, 130 Tex. 449, 110 S.W.2d 47, and other authorities therein cited. We are now of the opinion that our action above stated was erroneous for the following reasons: (1) Our statement in the original opinion to the effect that plaintiff did not return, or unconditionally tender, the $50 paid to him in settlement of his claim for damages was incorrect. It was so alleged by the trial amendment, and proved. (2) Plaintiff (appellee here) in his motion for rehearing states that the questions upon which we passed in reversing and rendering the judgment were not presented for our consideration by defendant (appellant here) in its assignments of error, nor briefed. This is correct. (3) Furthermore, we are now convinced that the principles of law announced in the cases above cited, and on which we formerly relied, are not applicable to the facts of this case when properly understood.

The principle of law applicable to the release in question under the circumstances disclosed by this record is plainly and definitely stated in an opinion by Justice Critz in Texas & N. O. Ry. Co. v. Thompson, Tex.Com.App., 12 S. W.2d 963, 964, 966, as follows:

"The defendants, by proper assignment, contend that the case should be reversed because of the refusal of the trial court to submit to the jury the following special issue requested by them: 'Did the plaintiff, Tommie L. Thompson, at the time he signed and swore to the release offered in evidence, and at the time he returned same to claim agent Davis, know of the terms and conditions of said release?'

"If the answer of the jury to the issue refused could have altered or changed the result of the case, the refusal to submit the issue was certainly reversible error; but, on the other hand, if the answer could not have altered or changed the result, then the trial court was correct in refusing to submit this issue.

"We are of the opinion that in so far as the jury finding is concerned, it is absolutely immaterial to any issue of this case whether plaintiff knew the terms and conditions of the release in question at the time he delivered the same to the claim agent of the defendant, for the reason that, if fraud induced the execution and delivery thereof, under the settled law of this state the release was voidable and subject to be set aside for fraud. Rapid Transit Co. v. Smith, 98 Tex. 553, 86 S.W. 322; Edward Thompson Co. v. Sawyers, 111 Tex. 374, 234 S.W. 873; Atchison, T. & S. F. Ry. Co. v. Skeen (Tex.Civ.App.) 174 S.W. 655 (writ refused). Such is the law of this state, even though the release contained the following recitations:

" 'To secure this settlement and the payment of said sum I hereby represent to said railroad that I am twenty-one years of age, and that I rely wholly upon my own judgment, belief and knowledge of the nature, extent, and duration of said injuries, disabilities and damages and that no representations or statements about them, made by said railroad's surgeons or agents have influenced me in making nor induced me to make this settlement.

" 'No promise of employment nor other agreement not herein expressed has been made by said railroad, nor by any of its officers, agents or employés.'

"It is the contention of the defendants that, since the release itself contains the above-quoted provisions, before plaintiff can set aside the release or contradict the terms thereof by oral evidence of fraud, the proof must show that fraud committed in the preparation of the release, or that the claim agent by some fraudulent act had prevented the plaintiff from ascertaining the true terms and conditions of said release. We cannot assent to this contention, for the reason that if the release is voidable on account of fraud in its inception, then each and every portion and clause thereto is unenforceable and without binding effect on the plaintiff.

"It is the settled law of this state that if the agent of the companies, as an inducement to procure the execution of the release, promised the plaintiff, and induced him to believe, that if he would execute the release he would get employment from the company as a switchman, and if such promise was not made in good faith, that is to say, if said claim agent had no intention of giving him such employment, then the release was voidable and subject to be set aside for fraud. Rapid Transit Co. v. Smith, 98 Tex. 553, 86 S.W. 322, and Edward Thompson Co. v. Sawyers, 111 Tex. 374, 234 S.W. 873.

\* \* \* \* \* \*

"It therefore follows, from the above authorities, and many others, that even though the plaintiff may have read over the release, and may have known its contents at the time he signed and delivered same to the claim agent of the defendant companies, such fact could not, in law, constitute such release a contract, binding on the plaintiff if it was procured by fraud, and therefore no error was committed by the trial court in refusing to submit this requested issue to the jury. Of course, we do not intend to say that such matters were not pertinent to go before the jury as evidence bearing on the issue of fraud as raised by the pleading of the parties."

Also see King v. Wise, Tex.Com.App., 282 S.W. 570.

■ With reference to the release it was plaintiff's contention, supported by evidence, that a physician in defendant's employ, knowing that a settlement was about to be attempted, falsely and fraudulently misrepresented to plaintiff the extent and duration of his injuries and that defendant's claim agent and section foreman promised plaintiff permanent employment with defendant, with the intention not to fulfill such promise. (The facts are stated as borne out by plaintiff and his witnesses because the jury found for the plaintiff and against the defendant on all fact issues.)

Plaintiff contended and there was evidence to that effect, and the jury found, in substance, that defendant was guilty of negligence because (1) the defendant's foreman ordered plaintiff to go upon the roof and repair the flue when the conditions and circumstances were such that it was extremely dangerous and hazardous to attempt to climb the roof or repair the flue;

(2) that defendant was negligent in not furnishing plaintiff with a reasonably safe place for him to perform the labor required of him; (3) that the defendant was negligent in failing to provide plaintiff with a rope or ropes to be used in ascending the roof; (4) because the defendant was negligent in failing to furnish plaintiff with a hook and ladder for the purpose of climbing to the ridge of the house.

■ We think the evidence is sufficient to sustain plaintiff's contentions and the findings of the jury with reference thereto. We think plaintiff correct in his contention that the injury did not result from climatic conditions alone; that they resulted from an improper command at an improper time for plaintiff to go up on the roof when it was dangerous and hazardous to do so and defendant's failure to provide plaintiff, or to use reasonable diligence to provide him, with a safe place and proper and suitable tools and facilities with which to do the work, under the circumstances. The command to go up on the roof and make the repairs under the circumstances was given at an inopportune time. (But the time alone was not the cause of the injury). The evidence shows there was no emergency. There was no situation which made it either imperative or important that the work plaintiff was commanded to then do was necessary at that time. Whether or not the matters mentioned constituted negligence, under the circumstances, was a question of fact for the jury. The court, therefore, did nor err in overruling defendant's motion for an instructed verdict. Texas & N. O. Ry. Co. v. Thompson, Tex.Civ.App., 1 S.W.2d 938, affirmed Tex.Com.App., 12 S.W.2d 963; Ft. Worth Elevators Co. v. Russell, 123 Tex. 128, 70 S.W.2d 397; Morton Salt Co. v. Wells, 123 Tex. 151, 70 S.W.2d 409; Commerce Milling & Grain Co. v. Gowan, Tex.Civ.App., 104 S.W. 916.

■ The defendant contends that even if it should be held that the evidence sustains the jury's finding of negligence, nevertheless plaintiff is not entitled to recover because he assumed the risks incident to his employment. We think it cannot be successfully contended, under the peculiar combination of circumstances disclosed by this record, that plaintiff was subjected only to the ordinary risks of his employment. The plea of assumed risk is not available to defendant, a Railway Com-

pany, as a bar to recovery of damages suffered by plaintiff, its employee, resulting from defendant's negligence, even though the risks were known to plaintiff. Art. 6437, R.S.1925. Said statute does provide that defendant may, for the purpose of diminishing the amount of damages recoverable by plaintiff, plead and prove that, in view of the risks, dangers and hazards known to plaintiff, he was negligent in remaining in the employment of defendant. Defendant has not made such allegation nor proof.

▌ Therefore, in this case, it is immaterial that plaintiff knew of the danger in attempting to scale the roof as he was directed to do, such risk resulting from the negligence of defendant.

It was said in Texas & N. O. Ry. Co. v. Tilley, Tex.Com.App., 6 S.W.2d 86, 87:

"In our statute (article 6437, R.S.1925) it is provided:

" 'That while the employee does assume the ordinary risk incident to his employment he does not assume the risk resulting from any negligence on the part of his employer, though known to him.'

"It is further provided that, in a suit wherein 'it is alleged and proven' that the 'employee was chargeable with negligence in continuing in the service *, *' * in view of the risk, dangers and hazards of which he knew or must necessarily have known, in the ordinary performance of his duties,' such 'fact shall not operate to defeat recovery, but the same shall be treated and considered as constituting contributory negligence,' with possible diminishment of recovery.

"The pleading does not include a charge of negligence 'in continuing in the service'; hence the part of the state statute secondly mentioned has no application."

Also see Wichita Falls & S. Ry. Co. v. Holbrook, Tex.Civ.App., 50 S.W.2d 428; Olds v. Missouri, K. & T. Ry. Co., Tex. Civ.App., 228 S.W. 336; Gulf, C. & S. F. Ry. Co. v. Kennedy, Tex.Civ.App., 139 S. W. 1009; Freeman v. Kennerly, Tex.Civ. App., 151 S.W. 580.

We think the authorities relied upon by the defendant may be distinguished upon the facts, or because interstate commerce was involved in such cases, or because Art. 6437 was not applicable in said cases.

We have considered all of appellant's propositions. We do not think any of

them manifest reversible error. The plaintiff's (appellee's) motion for rehearing is granted. The judgment of the district court is affirmed.

FUNDERBURK, Justice (dissenting).

It seems to me there are at least two obstacles to an affirmance of this judgment. One is that the pleadings did not present a cause of action to cancel the release of the cause of action for damages; the grounds for cancellation being presented only by way of avoidance of the release. The other is that, as a matter of law, the evidence properly appraised, in connection with the terms of the release, was insufficient to authorize cancellation of the release.

Both of these questions are rendered difficult by reason of decisions apparently supporting contrary answers.

The first question, it is believed, should be controlled by the proper answer to this further question: Did the plaintiff, under the record, have a cause of action for damages? The question is not whether such cause of action was alleged, but did it, in fact, exist? Within the purview of the question it may be granted that such cause of action did exist, unless it ceased to do so as the legal effect of the release.

If the release was valid the cause of action for damages ceased to exist from the time of its execution. If the release was void, it, of course, had no effect on the continued existence of the cause of action; and plaintiff did have a cause of action for damages at the time of filing the suit. Example, forgery. But the release was in fact executed. If its execution was induced by fraud the release was voidable, but not void. Until its invalidity was adjudicated, it had precisely the same effect upon the pre-existent cause of action as if it was valid. Limitation could not run against such pre-existent cause of action for the very obvious reason that there was no such cause of action upon which limitation could operate. Deaton v. Rush, 113 Tex. 176, 252 S.W. 1025; Port Arthur Rice Milling Co. v. Beaumont Rice Mills, 105 Tex. 514, 143 S.W. 926, 148 S.W. 283, 150 S.W. 884, 152 S.W. 629; Moore v. Snowball, 98 Tex. 16, 81 S.W. 5, 66 L.R.A. 745, 107 Am.St.Rep. 596. That when a cause of action is suspended by a deed, release or other executed contract, not void, but voidable, the cause of action is as though it had never existed, until the in-

strument which bars it is adjudged to be invalid, is a proposition supported more or less directly, but certainly, by the three decisions above cited and among others, the following: Williams v. Pure Oil Co., 124 Tex. 341, 78 S.W.2d 929; Chicago, T. & M. C. Ry. Co. v. Titterington, 84 Tex. 218, 19 S.W. 472, 31 Am.St.Rep. 39; Stanley v. Schwalby, 85 Tex. 348, 19 S.W. 264, 265; McCampbell v. Durst, 15 Tex.Civ.App. 522, 40 S.W. 315; Cleveland State Bank v. Gardner, Tex.Com.App., 286 S.W. 173; Southwestern Lumber Co. v. Evans, Tex. Civ.App., 275 S.W. 1078; American Exchange Nat. Bank v. Keeley, Tex.Civ.App., 39 S.W.2d 929; Humble O. & R. Co. v. Andrews, Tex.Civ.App., 285 S.W. 894; Stewart v. Miller, Tex.Civ.App., 271 S.W. 311; Universal Life & Acc. Ins. Co. v. Johnson, Tex.Civ.App., 120 S.W.2d 314.

The same proposition is impliedly, if not expressly, supported by the decisions in Rutherford v. Carr, 99 Tex. 101, 87 S.W. 815; Gilmore v. O'Neil, 107 Tex. 18, 173 S.W. 203; Eckert v. Wendel, 120 Tex. 618, 40 S.W.2d 796, 76 A.L.R. 855, which were distinguished on the ground that they dealt with void, and not merely voidable, instruments.

Under these authorities, the existence of any cause of action for damages such as alleged in this case depended upon the non-existence of a release, or, if any, that it was absolutely void and not merely voidable. In other words, to the only cause of action alleged in plaintiff's petition, the release itself was conclusive as a bar to recovery, wholly without regard to the existence of a cause of action (not alleged) to have it adjudged invalid. To express the idea still differently, since the right of plaintiff to enforce any cause of action for damages was wholly contingent upon the successful assertion of another and different cause of action—the cancellation of the release—it was essential for plaintiff to allege in his petition a cause of action for such cancellation, as well as the contingent cause of action for damages for tort. The cause of action for cancellation of the release was the primary cause of action. The other only incident.

No cause of action for cancellation of the release was alleged. Plaintiff did not allege it, his petition making no mention of it; and, of course, the defendant, relying upon the release, did not attempt to allege a cause of action for its cancellation. The release was pleaded by the defendant not as a cause of action, but as a defense against the otherwise conclusive effect of the release. Fraud was pleaded by the plaintiff, not in his petition as part of a cause of action for cancellation of the release, but in his supplemental petition as a defense. As just said, the allegations of fraud appear only in plaintiff's supplemental petition. In our system of pleading, it is never the function of plaintiff's supplemental petition to include allegations of a cause of action as a basis for the judgment sought by the suit. Crescent Ins. Co. v. Camp, 64 Tex. 521; Sanger Bros. v. Barrett, Tex. Civ.App., 221 S.W. 1087; Parkinson v. Sears, Tex.Civ.App., 290 S.W. 556; San Antonio U. & G. R. Co. v. Johnson et al., Tex.Civ.App., 1 S.W.2d 350; Bradley v. Fagala, Tex.Civ.App., 25 S.W.2d 255; Stephens v. Anson Motor Co., Tex.Civ. App., 21 S.W.2d 699; Thompson v. Caldwell, Tex.Civ.App., 22 S.W.2d 720; Atlas Metal Works v. City of Dallas, Tex.Civ. App., 30 S.W.2d 431, 432; St. L. & S. W. Ry. Co. v. Larkin, Tex.Civ.App., 34 S.W. 2d 693; Smith v. Fort, Tex.Civ.App., 58 S.W.2d 1080; First Nat. Bank v. Boyd, Tex.Civ.App., 75 S.W.2d 928, and cases cited. The subject matter of a supplemental petition is purely defensive against the operation of affirmative defenses alleged by defendant. In this case plaintiff's supplemental petition purports to contain nothing other than matters of defense against the release.

It must be admitted that the law books are full of cases just like this one. However, so far as we have found they do not discuss the question now under consideration. It seems to have been assumed that whether a release be void or voidable, the facts rendering it void or voidable are pleadable as matters of defense in a suit seeking to recover only upon the released cause of action. But if there be no distinction in this respect between a void and voidable release then it is difficult to understand why the Supreme Court in Gilmore v. O'Neil, supra, and more especially in Eckert v. Wendel, supra, labored so to make plain such difference as the basis for distinguishing those cases from the others above cited. The distinction declared by these decisions between void and voidable contracts as applicable to the very question of pleading under consideration seems to me to be decisive.

No distinction in principle is perceivable in the application of the law to void and

voidable judgment on the one hand, and to void and voidable releases of causes of action on the other. Can one under the necessity of maintaining a bill of review, in order to adjudicate the invalidity of a judgment, and, contingently thereupon, to recover upon the cause of action barred by the judgment, simply allege the nonexistent cause of action, and when the judgment is pleaded in defense, collaterally attack it by a supplemental petition? That, it seems to me, would hardly be contended. Such could in no proper sense be denominated the required suit, in equity, directly attacking the judgment which is universally recognized as necessary. Neither would it seem that the pleadings in this case show that the suit is one asserting a cause of action in equity for the direct purpose of setting aside the release. The attack upon the release may, not inappropriately, be denominated collateral, in precisely the same sense as would be the attack upon a judgment under similar pleadings.

It is true the distinctions involved in the conclusion expressed may, as a practical matter, in a majority of the cases not result in injury to the parties to the suit. That no doubt accounts for the great number of cases which have apparently assumed the correctness of procedure similar to that employed in this case. The apparent lack of harmony in the decisions manifestly does not result from any difference in applicable provisions of the law. It is important to understand the law and correctly apply it in every case, regardless of the fact that no party to a particular suit may be injured by a failure to do so.

If we look alone to the record proper, and to all of such record, it clearly shows that the cause of action upon the establishment of which any judgment for the plaintiff must necessarily rest, was not alleged in plaintiff's original petition (the trial pleading) nor any trial amendment, nor was any part of the subject matter of such cause of action alleged in any pleadings of the plaintiff, except as purportedly matters of defense in his First Supplemental Petition. To the question of whether a judgment is supported by such a record, it seems to me, there ought to be but one answer in a court of law.

In this case, the injury occurred on March 24, 1937. The release of the cause of action was executed April 30, 1937. Let us suppose the suit had not been filed until March 25, 1939. Would a plea of limitation have been good? No; because after April 30, 1937, no cause of action had existed upon which the statutes of limitations could operate to effect a bar. Because the suit was actually filed before either cause of action, if existing, could have been barred, certainly does not affect the question of the continuing nonexistence of the released cause of action, nor the necessity of alleging the only existent cause of action. Suppose the plaintiff had been continued in the employment of the defendant for, say, 3½ years, and had then been "fired" and became possessed of information that the defendant had from the first never intended to give him permanent employment, would his cause of action for damages be barred? If not, why? Is it not the obvious answer that he had no such cause of action to become barred? And the only cause of action which he would have had was not barred, being one to which the applicable period of limitation was four years and even further tolled for such time, if any, as such cause of action may have remained undiscovered by reason of defendant's fraud? Had plaintiff delayed the filing of suit until more than two years after the date of his injury, it is a safe assumption that he would not have brought this suit as he did merely alleging as the basis of the only relief sought, the released cause of action. Had he done so, and the defendant had merely pleaded limitation, he would have been under the necessity of admitting, in effect, that he had no such cause of action as he had alleged. He would have been confronted with the necessity of pleading another and different cause of action—one so certainly so that even the statutes of limitation applicable to it are different. But the mere time he files his suit cannot change the fact that he must allege in his petition the cause of action upon which any judgment is to be rendered in his favor. That, it is plain, he has not done in this case.

The other question, which assumes the sufficiency of the pleadings, is complicated by the decisions almost as much as the first one. Here is the question: Can one asserting a cause of action to cancel the release of a cause of action for damages for tort, on the ground that such release, although duly executed, was induced by a false promise of the releasee to give permanent employment to the releasor, support such cause of action by evidence of

the fact of the alleged false promise, when the release itself declares that no such promise was made? The question must be carefully distinguished from those wherein the fraud relates to the execution of the release as distinct from matters of inducement. In the instant case, plaintiff makes no contention that he did not read the release. He advances no theory to the effect that he was excused from being aware, at the time of its execution, of all the provisions of the instrument. The release asserted, purportedly in the words of the releasee, that "No promise of employment nor other agreement not herein expressed has been made by said Company, nor by any of its representatives, agents or employees." Can plaintiff impeach the release on the sole ground that it was induced by a fraudulent promise of employment? That is but another way of stating the question at issue. The majority opinion cites Supreme Court decisions which, on the facts, seem incapable of being distinguished. In the main, however, they declare propositions of law about which there is little room for differences of opinion. They simply assert, in effect, that since fraud voids a contract, the person defrauded cannot be held bound by any of the provisions of the written instrument, because it is not a contract. The logic of that proposition is not debatable. But it is not a question of being bound, or not bound, by a particular provision in the purported contract as a contract. It is rather a question of the insufficiency or inadequacy of evidence to establish the alleged fraud. One of the legal elements of the fraud, alleged to have consisted of the false promise of employment, was "that the releasor had a right to rely upon it." 53 C.J. sec. 35, p. 1219. As further said in the same connection: "A releasor, in order to avoid a release on the ground of fraud or misrepresentation, must show that he had a right to rely on the misrepresentation, and that he did in fact rely on it in executing the release." Plaintiff's declaration in the release that no promise of employment had been made him was not induced by any fraud. Since, if there was no promise of employment, there could be no fraudulent promise of employment, plaintiff voluntarily declared in the release the nonexistence of any such fraud as now asserted. The legal effect of such voluntary declaration included at least the admission that he did not rely upon such promise. It shows that he had no right to rely upon it. No effect should be given to his testimony to the contrary. The principle involves a species of estoppel. To permit one to make solemn declarations, in a contract not tainted by any fraud relating to the fact or manner of its execution, and then permit him to avoid the very contract by falsifying his own declarations, is contrary to the most elementary principles of justice.

This view is believed to be supported by two recent opinions of the Supreme Court. Distributors Inv. Co. v. Patton, 130 Tex. 449, 110 S.W.2d 47 and Texas & P. R. Co. v. Poe, 115 S.W.2d 591. The Poe case is different from this in that the fraud relied upon related to the execution of the instrument. The Supreme Court did not determine that the release was not voidable because of fraud in its execution, but because Poe kept in his possession for three or four days, and cashed, a check, the terms of which advised him that the release was not a receipt as he supposed, the court held him conclusively bound by the presumed knowledge furnished by the terms of the check.

The other case, it is believed, is directly in point. It must, of course, be read with the distinction in mind, that it involved, not fraud in the execution of an instrument by which the releasor did not know and was excused from knowing the terms of the writing. There are not a great number of decisions in addition to those cited supporting this view, but there are some, of which may be mentioned the following: Lane v. Urbahn, Tex.Civ.App., 246 S.W. 1070; Cassel v. West, Tex.Civ.App., 98 S.W.2d 437; Wright v. Couch, Tex.Civ.App., 54 S.W.2d 207; Murray Co. v. Putman, 61 Tex.Civ. App. 517, 130 S.W. 631; Lerner v. Roth, Sup., 136 N.Y.S. 61; Boswell v. Johnson, 5 Ga.App. 251, 62 S.E. 1003; Kreshover v. Berger, 62 Misc. 613, 116 N.Y.S. 20.